THE GRANITE ROOFING COMPANY OF BALTIMORE CITY
*vs.* ALEXANDER D. MICHAEL.

*Question as to the liability of a Subscriber to the stock of a Corporation, for the amount of his Subscription—Mode in which the Subscription must be called in—Action not maintainable against one member of a Firm for a partnership liability.*

In an action by a corporation against a subscriber to its stock to recover the amount subscribed, it was HELD:

1st. That if the corporation could be allowed to repudiate and discard the arrangement upon which the stock was taken, rated among the original subscribers, and settled for in the manner and to the extent that payment had been made, upon the ground that such agreement and dealing among the stockholders operated a fraud upon the corporation, it could only be done by treating the parties as ordinary subscribers for the stock.

2nd. That if the special agreement by which the stock was to be treated and registered as fully paid up, was to be rejected, the law would not supply by intendment any special terms by which the ordinary legal duties of the party claiming the benefit of the contract, would be dispensed with.

3rd. That while the law might regard as illegal and fraudulent, that which the parties had agreed upon in respect to the manner of entering and treating the stock, it would not arbitrarily incorporate in lieu thereof, terms in the contract to which the parties had never assented.

4th. That treating the defendant as an ordinary subscriber to the stock, without reference to the special arrangement and understanding upon which the stock was taken and held, the subscription could only be called in as provided in the 65th section of Article 26, of the Code.

5th. That the defendant was not liable in this action for interest on moneys of the corporation received by the firm of which the defendant was a member, and mingled with the funds of said firm;

but if there were any claim for the use of the money while it was held by the firm, the action should be against the firm and not against the defendant individually.


APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered ten prayers. of which the following only need be inserted :

10. That if the jury shall find that the defendant was a member of the firm of Michael & Brother, and that Henry J. Michael was one of said firm, and was also the President of the Granite Roofing Company, and as such president, received the sum of $980, part of the proceeds of an insurance paid to said company in the month of December, 1875, and with the knowledge of said defendant, and without the direction or sanction of the board of directors of said company, and the said sum of money was mingled with the funds of said firm, of which the defendant was a member, and was used by them, then under the common counts for money had and received and money lent, in this case the plaintiff is entitled to recover from this defendant the difference between the said sum, and the said sum with interest thereon, computed from the time the money so went into the hands of said firm, and the time when it was paid over to the company, as disclosed by the evidence in this cause offered by the defendant himself.

And the defendant offered four prayers, of which the following only need be inserted :

1. That if the jury shall find that the defendant agreed to take the stock alleged in the plaintiff's *narr.*, then the plaintiff is not entitled to recover, unless. the jury shall find a personal demand was made on the defendant for the amount of said subscription ninety days.

before the commencement of the suit in this case, and there is no evidence of such demand.

The Court (BROWN, J.,) granted the third and fourth prayers of the plaintiff, and the first, second and third prayers of the defendant, and rejected all the other prayers both of the plaintiff and defendant.

The plaintiff excepted and the verdict and judgment being against it, appealed.

The cause was argued before BARTOL, C. J., ALVEY, ROBINSON and IRVING, J.

*Victor Smith* and *Wm. M. Merrick*, for the appellant.

*J. Alexander Preston*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

This is an action of assumpsit brought by a corporation against a subscriber to its stock, to recover the amount subscribed. And the first question is, whether the action can be maintained, under the circumstances of the case.

The planitiff was incorporated under the general incorporation Act of 1868, ch. 471, embodied into the Code as Art. 26. By the 65th section of that Article, it is provided that the directors or managers of any corporation created under that law, may call in and demand from the stockholders, all sums of money by them subscribed, at such times, and in such payments and instalments as they, the directors or managers, may deem proper, under penalty of forfeiting the shares subscribed, and all previous payments made thereon, if payment shall not be made by the stockholder within ninety days after personal demand, or after notice requiring such payment, published in a newspaper printed nearest to the place where the principal office of the corporation is located. And the construction of this section has been, as settled by this

Court, that the demand or notice, as prescribed by the statute, is a condition precedent to the right of the corporation to sue for calls or assessments upon the stock subscribed. *Hughes vs. Antietam Manf. Co.*, 34 *Md.*, 316; *Scarlett vs. The Academy of Music*, 43 *Md.*, 203.

In this case, the defendant was one of the original incorporators and subscribers to the stock of the plaintiff company, subscribing for 108 shares, the nominal value being $10 per share. His brother Henry J. was also an original incorporator, and subscriber to the stock, the subscription of the latter being for 107 shares; the two subscriptions together making 215 shares. The two brothers were directors of the company from its organization until the 17th of March, 1877, and Henry J. Michael was the president. It appears that the defendant, his brother Henry J., John G. McCullough, and Peter Morgan and his wife, had subscribed for and owned a large majority of the stock, indeed, nearly all of it that had been originally disposed of. The three first named parties subscribed for more than a majority of all the stock authorized to be issued. The two Michaels, McCullough, Morgan and D. A. Randall, constituted the board of directors, and had the entire control of the affairs of the company. The stock subscribed for by all of them was entered on the books of the company as fully paid up at par; and it was the understanding from the commencement that such subscriptions of stock should be so entered and treated. It appears that the plaintiff, upon its organization, purchased the property, consisting of machinery, patent-rights, &c. which had belonged to the Maryland Roofing Company, a corporation that had just been dissolved; and by some arrangement, the debts of the Maryland Roofing Company, for which the property was liable, were required to be paid, or assumed to be paid, by those engaged in the organization of the plaintiff company, before the property could be transferred. It was in proof that the Maryland Roof-

ing Company owed the Michaels a sum between $1100 and $1200; and it was arranged by the president and directors, being themselves subscribers to the larger portion of the stock, and apparently with the knowledge and acquiescence of all parties then concerned, that the stock should be rated at $7.75 per share, and the Michaels given credit for their debt against the Maryland Roofing Company; and they gave their note for the balance, amounting to $508. The stock was so rated to all the original stockholders of the company; and it was registered as paid up stock, and certificates issued therefor, though no money at the time was actually paid in to the company on account of such stock. This stock was so held, and the affairs of the company were managed by the original president and directors, until the 17th of March, 1877, when Peter Morgan, one of the original incorporators, bought out all the stock held by McCullough, and the two Michaels, except one share each, and the old certificates were surrendered and new certificates issued by the company to Morgan, who, as it would appear, still holds the stock. At that time there was a change in the directory, and the affairs of the company have since been managed by persons different from those first in control.

It does not appear that any creditors of the company have been in any way affected or prejudiced by the manner in which the stock has been treated and dealt with by the original incorporators of the company. But it is contended that the entry of the stock upon the books of the corporation, and the agreement among the subscribers that it should appear and be regarded as paid up stock, when in fact it was not, was a fraud upon the corporation, and those who might subsequently hold the stock of the company. And assuming such to be the case, there would seem to be great difficulty in the way of maintaining the present action, founded as it is upon the contract of subscription. In the first place, seeing that what has

been done was done by the sanction of the company, through its president and directors, being themselves the original incorporators and subscribers for a majority of the stock, and that the stock originally subscribed for by the defendant was transferred, with the sanction and by the act of the company, as far back as March, 1877; it may be a very doubtful question whether an action upon the subscription is the proper form of remedy against the defendant. But without stopping to discuss that question, or to express any definite opinion in regard to it, we think it clear, that if the corporation can be allowed to repudiate and discard the arrangement upon which the stock was taken, rated among the original subscribers, and settled for in the manner and to the extent that payment has been made, upon the ground that such agreement and dealing among the stockholders operated a fraud upon the corporation, it can only be done by treating the parties as ordinary subscribers for the stock. If the special agreement by which the stock was to be treated and registered as fully paid up, is to be rejected, the law will not supply by intendment any special terms by which the ordinary legal duties of the party claiming the benefit of the contract will be dispensed with. It was certainly not the intention of the parties to obligate themselves to pay in cash, immediately upon the subscription, the full par value of the stock. And while the law may reject, as illegal and fraudulent, that which the parties have agreed upon, in respect to the manner of entering and treating the stock, it will not arbitrarily incorporate, in lieu thereof, terms in the contract to which the parties have never assented. See *Thompson on Liability of Stockholders, sec.* 133, and the authorities there cited. And treating the defendant as an ordinary subscriber to the stock, without reference to the special arrangement and understanding upon which the stock was taken and held, the subscription could only be called

in as provided in the 65th sec. of Art. 26 of the Code, the terms of which have already been stated. Here there is no pretense, that either the personal demand was ever made, or the public notice given, as required by the statute, before the institution of the action; and if we concede that the action may be maintained by the corporation on the subscription, against the defendant, notwithstanding he has long since transferred the stock, we think the Court below was entirely right in granting the first prayer on the part of the defendant. And that disposed of the case. The proposition embraced by the plaintiff's tenth prayer, which was rejected, cannot be maintained. If there be any claim for the use of the money while it was held by the firm composed of the brothers Michael, the action should be against the firm, and not against the defendant individually. The judgment therefore must be affirmed.

*Judgment affirmed.*

(Decided 3rd June, 1880.)