[No. 1099. Decided May 17, 1894.]

JAMES K. ELDERKIN, *Receiver*, *Respondent*, v. FRED H.
PETERSON, *Appellant*.

CORPORATIONS — SUBSCRIPTIONS TO STOCK — RIGHT OF RECEIVER
TO ENFORCE — PLEADING — INSTRUCTIONS.

The receiver of an insolvent corporation may bring a separate
suit against a stockholder to recover any sum due upon his share of
stock.

In an action by the receiver of an insolvent corporation to re-
cover upon unpaid subscriptions to its stock, the defendant cannot
question the regularity of the appointment of the receiver nor the
judgment of the court as to the necessity of collecting the unpaid
subscriptions to capital stock.

In such an action a complaint does not state a cause of action,
under Gen. Stat., § 1507, when it fails to allege that the defendant
had notice of the call for assessments upon his stock, made by the
receiver under the order of the court.

In such an action a charge to the jury that "it matters not
whether the full quota of stock was subscribed or not in this case"
is erroneous because it assumes that the evidence shows such con-
duct on the part of the defendant as an officer of the corporation as
would amount to a waiver of the defense that the whole of the
capital stock had not been subscribed.

The fact that a certificate of stock purports on its face to be paid
up stock of a corporation will not warrant the court in instructing
the jury that the certificate should be considered as paid up and
non-assessable, when the plaintiff enters a denial to such defense
and introduces evidence showing that the certificate was not issued
as paid up by the authority of the corporation.

Where an action is brought to recover the whole amount unpaid
on the stock of an insolvent corporation held by the defendant, and
which had been declared to be due and payable by order of the
court, sitting as a court of equity, it is error for the court to charge
the jury that defendant is not liable to pay the whole of the unpaid
balance of his subscription, unless the evidence shows that it is nec-
essary in order to discharge the debts and liabilities of the corpora-
tion.

*Appeal from Superior Court, King County.*

*Fred H. Peterson*, and *Battle & Shipley*, for appellant.

*Wiley & Bostwick*, and *Thompson, Edsen & Humphries*, for respondent.

The opinion of the court was delivered by

ANDERS, J.—The respondent was appointed receiver of the Seattle Insurance Company by the superior court of King county, and as such receiver was directed by said court to collect from the subscribers and stockholders of said corporation the whole of their subscriptions to the capital stock of the company. Thereafter the respondent instituted this action to recover the sum of $38,829.33, alleged to be due from the appellant as the unpaid balance on the capital stock of the company held and owned by appellant at the time of the commencement of the action. The defendant filed a motion to strike from the complaint certain designated portions thereof, which motion was in part sustained and in part denied, and the defendant then interposed a general demurrer to the complaint, which was overruled by the court, and thereupon the defendant filed his answer, which denied certain allegations of the complaint and admitted certain other allegations thereof, and which also set up four separate affirmative defenses. The plaintiff demurred to each of the affirmative defenses pleaded, and the demurrer was sustained as to the first, third and fourth defenses, and overruled as to the second, whereupon plaintiff replied, denying the allegations contained in the second of said affirmative defenses. A trial was had, resulting in a judgment in favor of the plaintiff for the sum of $8,861.

The appellant's first contention is, that the court committed error in overruling his demurrer to the complaint. He urges several propositions in support of his position, the first of which is that the receiver should have instituted an action in equity and not at law, and made all the other stockholders parties defendant, or, at least, should have

assigned some reason why the holders of the remaining shares of stock were not made defendants.  And he cites the case of *Burch v. Taylor*, 1 Wash. 245 (24 Pac. 438), as authority for the proposition that it is the settled law of this state that unpaid subscriptions to the capital stock of a corporation can only be recovered by a proceeding in equity.  An examination of that case, however, will disclose the fact that it was an action brought by a creditor of a corporation, who was also a stockholder, against another stockholder, to recover an unpaid balance upon a subscription; and the court held that, in that class of cases, the remedy must be in equity and not at law.  But the case at bar is of a different character, and the doctrine announced in that case is not necessarily applicable to this. A stockholder is a debtor of the corporation to the amount unpaid upon his shares of stock, and the receiver in this instance, as the representative of the corporation, is simply seeking to collect such a debt.  He has succeeded to all the rights of action which were vested in the insurance company. 20 Am. & Eng. Ency. Law, p. 235.  And as the corporation itself, under the circumstances of this case, might have maintained an action at law against the appellant, we have no doubt that the action was properly brought by the receiver.  It is said in Wait on Insolvent Corporations, § 235, that—

"The receiver of an insolvent corporation may bring separate suits against the several stockholders to recover any sum remaining due upon their shares of stock.  If the corporation has instituted suit for the unpaid subscription, the receiver may continue the action in the name of the original plaintiff."

And, under what circumstances a separate action at law may be brought in this class of cases is clearly explained by Thompson in his treatise on Liability of Stockholders. In § 349 of that work the learned author says that if the

liability of stockholders is limited, and several—each one standing responsible for a definite sum, and no more—and if, under the particular statute, an action at law will lie, then a separate action may be brought against each one; but if the liability of stockholders is primary and unlimited, like that of partners, all should be joined, for such an action is *quasi ex contractu.*  See also Boone on Corporations, §§ 108, 119; Beach on Receivers, § 666; *Dayton v. Borst,* 31 N. Y. 435; *Phœnix Warehousing Co. v. Badger,* 67 N. Y. 294; *Billings v. Robinson,* 94 N. Y. 415; *Selma & Tenn. R. R. Co. v. Tipton,* 5 Ala. 787.

The next objection to the complaint is, that it is not alleged therein that defendant had any notice of the application for the appointment of a receiver, or any notice whatever of the petition upon which it was adjudged that the receiver collect from the subscribers and stockholders of said corporation the whole of their subscriptions to the stock of the corporation.  But we are of the opinion that the appellant cannot now question the regularity of the appointment of the receiver, or the judgment of the court as to the necessity of collecting the unpaid subscriptions for the purpose of paying the company's debts.  When assessments are made by officers or persons properly authorized so to do, the necessity for making the calls cannot be questioned by the stockholders.  *Budd v. Multnomah St. Ry. Co.,* 15 Or. 413 (15 Pac. 659); *Chouteau Ins. Co. v. Floyd,* 74 Mo. 291.  The court not only had a right, under the statute, to appoint the receiver, but it was also authorized to make a call requiring stockholders to pay for their stock.  Wait on Insolvent Corporations, § 218; *Scovill v. Thayer,* 105 U. S. 143.

Lastly, it is insisted that the complaint is insufficient for want of an allegation that the appellant had notice of the call made by the court, and that demand was made for payment in accordance with the order of the court.  This ob-

jection, in our opinion, is unanswerable.   While the court must be held to have properly made the order to collect all unpaid subscriptions to the capital stock of the insolvent company, and while it was the duty of the receiver to collect the same for the benefit of creditors, yet, as we construe our statute upon this subject, the appellant was entitled to notice of the assessment, and to have an opportunity to pay it before an action could properly be brought against him to recover the amount of the call.   It is true there is a diversity of opinion among the decisions of the courts upon this question, but we believe all of the cases recognize the principle that statutory provisions must be complied with.   Cook on Stock and Stockholders (3d ed.), § 117.   And in § 1507, Gen. Stat., it is provided that in all cases, notice of each assessment shall be given to the stockholders personally or by publication in some newspaper published in the county in which the principal place of business of the corporation is located; and if none be published in such county, then in the newspaper nearest to said principal place of business in the state.   It is urged, however, on behalf of the respondent that this provision only applies in cases where the corporation undertakes to sell the stock of defaulting shareholders for the payment of their assessments, and that notice of the assessment is not required to support an action at law to enforce such payment.   But we do not think the statute above mentioned will admit of such construction, for it plainly states that notice must be given in *all* cases, and not merely in those in which the corporation seeks to apply the proceeds of stock in payment of assessments.   The cases cited in support of appellant's position from New York and Indiana, according to our understanding of them, were based on statutes much less specific than ours.   *Lake Ontario, etc., Ry. Co. v. Mason,* 16 N. Y. 451; *Smith v. Indiana & Illinois Ry. Co.*, 12 Ind. 61; *Heaston v. C. & F. W. R. R. Co.*, 16 Ind.

275. And even in the case last cited it was said that where the statute requires notice, it must be given.

A learned text writer lays down the law on this subject as follows:

"The general rule is, that, in the absence of an express provision in the charter or articles of association of a corporation, requiring notice to be given to the shareholders after a call has been voted, no notice is necessary in order to hold the shareholders liable to pay the amount of the call; and it has been held that no demand is required before the institution of a suit." 1 Morawetz on Private Corporations, § 147.

See, also, Cook on Stock and Stockholders (3d ed.), § 118; *Hughes v. Antietam Mfg. Co.*, 34 Md. 316; *Granite Roofing Co. v. Michael*, 54 Md. 65; *Dexter and Mason Plankroad Co. v. Millerd*, 3 Mich. 91.

The provision of the statute requiring notice of the assessment to be given to the stockholders is, of course, as fully applicable to assessments made by the courts as it is to those made by trustees. It is suggested in the brief of the respondent that the allegations in the complaint that certain assessments were made by the trustees of the company, and that the defendant was present at the time the assessments of stock were made by the board of trustees of said corporation, and made the motion before said board for the assessment of said stock to pay said losses incurred by said corporation, amount to an averment that the appellant had notice thereof. But even if that be so, which we do not decide, it could be of no avail to respondent here, for this action was not based upon an assessment made by the trustees, but upon that made by the court. From what we have said it follows that, in our opinion, defendant's demurrer ought to have been sustained; and for the same reasons the plaintiff's demurrer to defendant's third and fourth affirmative defenses, in which he pleaded want of notice, should have been overruled.

As a first affirmative defense to the action, the defendant alleged that the whole amount of the capital stock of this corporation had never been subscribed, and that he had no notice whatever of that fact until on or about August, 1890, and that he thereafter refused to pay any part of said calls or assessment of stock, and refused to ratify the same. As we have before stated, the court sustained the demurrer to this plea, and appellant now insists that the ruling of the court thereon was erroneous. But, if it was wrong, the appellant was not injured thereby for the reason that the decision of the court was, in fact, disregarded at the trial, and evidence was introduced both to prove and to disprove that the whole twenty-five hundred shares of capital stock were subscribed. It is a general rule in this country that a stockholder is not liable on his subscription to capital stock of a corporation unless the whole of the capital stock has been subscribed. *Denny Hotel Co. v. Schram*, 6 Wash. 134 (32 Pac. 1002).

But the appellant concedes that the rule is not without exception, and that in a particular case the circumstances may be such that the defendant may be estopped from availing himself of the defense that the whole amount of the stock was not subscribed. He insists, however, that, in this instance, the charge of the court took from the jury the determination of the question whether or not the whole of the capital stock was subscribed, or whether the evidence established an estoppel as against the defendant; and, further, that the charge assumed that the defendant, merely by reason of being an officer or trustee of this corporation, became possessed of knowledge of the fact that the company was not authorized to transact business, and that he incurred liability as a stockholder after he acquired such knowledge. We think the charge is obnoxious to the objections made by the appellant. The court should not have said to the jury, "It matters not whether the full quota of stock was

subscribed or not in this case," because that could be true
only upon the hypothesis that the evidence showed such
conduct on the part of the defendant as a trustee or officer
of the corporation as would amount to a waiver on his
part of the defense that the whole capital stock had not
been subscribed; and whether or not the evidence war-
ranted such a conclusion was a question to be determined
by the jury under proper instructions by the court.     But
as the evidence was such that the jury would not have been
justified in finding that the whole of the capital stock was
not subscribed, it would seem that the instruction com-
plained of was not so prejudicial to appellant as to alone
constitute a ground for a reversal of the judgment.

The appellant alleged in his answer that he was em-
ployed by the Seattle Insurance Company as its attorney,
and that the said company, for and in consideration that he
would advise said corporation, and perform general legal
services for the same, issued to him one hundred shares of
paid up stock of the said corporation, and that he accepted
the same as paid up stock in full payment of legal services
rendered and thereafter to be performed, and that he had
received no other compensation whatever for said legal
services so rendered, and that he performed said services
so required and demanded of him, and that said. shares of
stock were not subject to any call or assessment.     The re-
spondent replied to this alleged defense by a general de-
nial.     Upon the trial the plaintiff undertook to hold the
defendant liable for the amount of the certificate, and ad-
duced evidence to show that no consideration whatever
was given therefor to the insurance company, and that the
same was not issued as paid up by authority of the corpo-
ration.

It appears from the record before us that this certificate
purported upon its face to be paid up stock of the com-

pany, but no record of its being in any respect different from the ordinary assessable shares of stock appeared upon the company's books. The defendant requested the court to charge the jury that this certificate of one hundred shares should be considered as paid up and non-assessable, which instruction the court refused to give, but submitted to the jury the determination of the question whether it was issued for services rendered by defendant as alleged in his answer (in which event they were directed to find for the defendant), or whether it was marked paid up without any authority, but simply by virtue of an agreement entered into by certain of the trustees, one of whom was the defendant, that it should be so designated upon its face, while in fact it was considered as a gift or promoter's fee, in which latter event the jury were instructed, in substance, that the fact that the certificate was marked paid up did not make it such, but the defendant would be liable to pay for the stock notwithstanding such secret agreement.

The appellant earnestly insists that the court erred in not charging the jury as requested, and he argues that inasmuch as the certificate was shown to be marked upon its face as fully paid up, the contrary could not be shown in this action, and the court was bound to recognize it as being just what it purported to be on its face, and should have so instructed the jury. The principle upon which the appellant relies, that a corporation after issuing its stock as paid up stock, and declaring it to be so, cannot subsequently repudiate its agreement, and proceed at law to collect the unpaid portion of the stock at par value, seems to be well established, and generally recognized by the courts. Cook on Stock and Stockholders (3d ed.), §38; *Scovill v. Thayer*, *supra*.

In *Scovill v. Thayer*, *supra*, the subscribers of stock of an incorporated company paid twenty per cent. on their

shares, and entered into an agreement with the company
that no further assessments should be made thereon, and
certificates for full paid shares were issued to them, and
their accounts on the company's books were credited with
the amounts paid, and the unpaid balance was credited to
the subscriber by ''discount,'' and their accounts with the
company thus balanced.    Upon this state of facts the
court held that the agreement was in equity void as to
creditors, and that no action at law could be maintained
against a stockholder to recover upon his unpaid subscrip-
tion of stock until the said agreement was set aside as be-
ing in fraud of creditors.    In the course of the opinion
the court said:

   ''It is conceded to have been the contract between him
[defendant] and the company that he should never be
called upon to pay any further assessments upon it.    The
same contract was made with all the other shareholders,
and the fact was known to all.    As between them and the
company this was a perfectly valid agreement.''

   In the present case, however, the agreement set up in
the answer is not conceded, but is specifically denied.    The
substance of the appellant's defense, as to the one hundred
shares of stock, was that the consideration therefor was
paid by services which he had performed for the company
in pursuance of an agreement entered into between the
company and himself, and we think the question raised by
plaintiff's denial was rightfully submitted to the jury for de-
termination.    If the stock was issued to appellant as fully
paid, in consideration of services performed by him, as he
alleged, he was not liable to pay any assessments thereon,
and the court in effect so charged the jury.    But whether
it was so paid for was the very question to be determined,
and this being so, the authorities cited by appellant in
support of his contention are not fully applicable here.

   The objection that the court gave inconsistent instruc-

tions to the jury is, we think, well taken.   The jury were charged as follows:

"The court instructs the jury that if they find from a preponderance of the evidence that the Seattle Insurance Company was insolvent, and that the defendant is the owner of stock on an unpaid subscription to the capital stock of said insurance company, then in such case the defendant would be liable in this case for the full amount of the stock of said company held by the defendant at the time of the commencement of this action, less the amount that he paid thereon; in other words, in such case he would be liable for all unpaid stock held or subscribed for at that time."

Subsequently the court further charged the jury in effect that defendant was not liable to pay the whole of the unpaid balance of his subscription unless the evidence showed that it was necessary for him to pay the same in order to discharge the debts and liabilities of the corporation.   As both of these instructions could not be correct, the court clearly committed error in thus giving them to the jury. According to our view of this case the action was brought to recover the whole amount unpaid on the stock held by the appellant and which was declared to be due and payable by order of the court, sitting as a court of equity, and it was therefore improper to submit to the consideration of the jury the question whether or not the whole of said amount was necessary for the payment of the debts of the company.   That question, as we have already intimated, had been determined by competent authority before the beginning of this action, and the receiver had been authorized to collect whatever amount remained unpaid upon subscriptions to the capital stock of the corporation.   Upon this theory of the case, the first of these instructions was correct, but the second and erroneous one was not thereby cured, and it may have been the more influential of the two upon the minds of the jury.

We perceive no error on the part of the court in permitting the bookkeeper and the secretary of the company to state the aggregate indebtedness of the corporation, as shown by its books, without introducing the books themselves in evidence, nor in permitting the introduction of written proofs of losses made by various policyholders. The liabilities of the company can hardly be definitely ascertained from the evidence, and it may be true, as claimed by the appellant, that it was not necessary to make a call for the whole amount of the unpaid subscription, but that is not a question for us now to determine. But of one thing we feel thoroughly satisfied, and that is, that the appellant should have had notice of the assessment, as provided by law, before this action was commenced against him. Although he became indebted to the corporation to the amount of his subscription at the time he subscribed for his stock, he was under no obligation to make payment until properly notified of the amount required, and the want of such notice would alone have constrained us to reverse the judgment, but in view of a possible new trial, we have endeavored to point out all other errors deemed material appearing of record.

The judgment is reversed, and the cause remanded to the lower court with instructions to sustain the defendant's demurrer to the complaint.

DUNBAR, C. J., and SCOTT, STILES and HOYT, JJ., concur.