[No. 5920. Decided February 23, 1906.]

J. E. CHILBERG, *Appellant,* v. JOHN SIEBENBAUM *et al.,*
*Respondents.*[1]

CORPORATIONS—INSOLVENCY—SUBSCRIPTIONS—ACTION BY CREDITOR—
LIMITATIONS. The right of action in favor of creditors of an insol-
vent corporation against its stockholders to enforce the stock sub-
scription liability accrues at least as soon as the corporation disposes
of all its assets, ceases to do business as a going concern and be-
comes notoriously insolvent.

SAME—NECESSITY OF CALL OR ASSESSMENT. After the declared or
notorious insolvency of a corporation, the liability of the stock-
holders upon their undue stock subscriptions becomes fixed and im-
mediately due without the necessity for a call or assessment thereon.

SAME—JUDGMENT AND RETURN OF NULLA BONA. Upon the insolv-
ency of a corporation, an action by a creditor upon a demand against
the corporation does not suspend the running of the statute of limi-
tations as against stockholders until the recovery of judgment, and
the corporate debt is not merged in such judgment, as judgment
and return of *nulla bona* is not necessary where it is shown that the
same would be futile.

SAME—CONTINUATION OF LIABILITY. The stockholders of an in-
solvent corporation do not continue liable upon stock subscriptions
as long as liability exists against the corporation.

SAME—NOTICE TO CREDITOR OF UNPAID SUBSCRIPTIONS. The creditor
of an insolvent corporation cannot claim that his right of action
against stockholders upon their unpaid stock subscriptions does not
accrue until notice that there were unpaid subscriptions was brought
home to him, in the absence of fraud or concealment, since under
Bal. Code, § 4269, the creditor had access to the corporate books and
opportunity to ascertain the facts.

Appeal from a judgment of the superior court for Jeffer-
son county, Hatch, J., entered June 2, 1905, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, dismissing an action against stock-
holders, brought by a creditor of an insolvent corporation to
recover unpaid stock subscriptions. Affirmed.

[1]Reported in 84 Pac. 598.

*G. M. Emory (F. R. Conway,* of counsel), for appellant. The statute did not begin to run against the plaintiff and in favor of the stockholders until the entry of judgment against the corporation. *Remington Paper Co. v. Hudson,* 64 Kan. 43, 67 Pac. 636; *Holland v. Duluth Iron Min. etc. Co.,* 65 Minn. 324, 68 N. W. 50, 60 Am. St. 480; *Stephens v. Fox* 83 N. Y. 313; *Hawkins v. Glenn,* 131 U. S. 319, 9 Sup. Ct. 739, 33 L. Ed. 184; *Glenn v. Williams,* 60 Md. 93; *Powell v. Oregonian Co.,* 38 Fed. 187. Plaintiff's cause of action did not accrue until execution was returned unsatisfied. 1 Cook, Corporations (5th ed.), pp. 394, 395, § 200; *Walser v. Selegman,* 13 Fed. 314; *King v. Pony Gold Min. Co.,* 28 Mont. 74, 72 Pac. 309; *Albright v. Texas etc. R. Co.,* 8 N. M. 422, 46 Pac. 448; *Bayliss v. Swift,* 40 Iowa 648; *Patterson v. Lynde,* 112 Ill. 196; *Scoville v. Thayer,* 105 U. S. 143, 26 L. Ed. 968; Wait, Insurance Corporations, pp. 93, 565, 575. There must be a call or demand on the stock subscription liability before suit. *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936; *Glenn v. Williams, supra; Baltimore etc. Turnpike Co. v. Barnes,* 6 H. & J. (Md.) 57; *Curry v. Woodward,* 53 Ala. 371; *Terry v. Anderson,* 95 U. S. 628, 24 L. Ed. 365.

*A. W. Buddress,* for respondents, cited, *inter alia*: *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113; *Younglove v. Kelly Island Lime Co.,* 49 Ohio St. 663, 33 N. E. 234; *Hodges & Wilson v. Silver Hill Min. Co.,* 9 Ore. 200; *Sleeper v. Goodwin,* 67 Wis. 577, 31 N. W. 335; *Glenn v. Dorsheimer,* 23 Fed. 695; *Boyd v. Mutual Life Ass'n,* 116 Wis. 155, 90 N. W. 1086, 94 N. W. 171, 96 Am. St. 948, 61 L. R. A. 918; *Salt Lake Hardware Co. v. Tintic Milling Co.,* 13 Utah 423, 45 Pac. 200; *Terry v. Tubman,* 92 U. S. 156, 23 L. Ed. 537; *Zang v. Wyant,* 25 Colo. 551, 56 Pac. 565, 71 Am. St. 145; *Guerney v. Moore,* 131 Mo. 650, 32 S. W. 1132; *Brobston v. Downing,* 95 Ga. 505, 22 S. E. 277; *McDonnell v. Alabama Gold Life Ins. Co.,* 85 Ala. 401, 5

South. 120; *Gibbs v. Davis,* 27 Fla. 531, 8 South. 633; Private Corporation Act, New York, § 24, quoted in *Hardman v. Sage,* 124 N. Y. 25, 26 N. E. 354; *Hirshfeld v. Bopp,* 145 N. Y. 84, 39 N. E. 817; *Fox v. First Nat. Bank,* 9 Kan. App. 18, 57 Pac. 241; *Webber v. Hovey,* 108 Mich. 49, 65 N. W. 619; *Harmon v. Page,* 62 Cal. 448; *Bird & Co. v. Calvert,* 22 S. C. 292; *Parker v. Carolina Sav. Bank,* 53 S. C. 583, 31 S. E. 673, 69 Am. St. 888; 20 Ency. Plead. & Prac., 739, 740.

RUDKIN, J. — This action was brought by a judgment creditor of the Copper River Transportation & Mining Company, an insolvent corporation, to enforce the stock subscription liability of certain of its stockholders. Several defenses were interposed by answer, but only one of these is before us for consideration on this appeal. The answer averred, in substance, that the Copper River Transportation & Mining Company was organized on the 26th day of November, 1897; that prior to the 1st day of April, 1898, said company disposed of all of its property and assets, became insolvent and ceased to do business, and since said 1st day of April, 1898, said company has transacted no business of any kind, has had no property or assets and has been notoriously insolvent and defunct; that a receiver was appointed for said company, as an insolvent corporation, at the suit of the plaintiff's assignor and one Barneson, on the 28th day of October, 1898, and on the 24th day of October, 1900, the receiver was discharged for the reason that there was no longer need for a receivership, there being no property or assets of any kind belonging to said company; that this action was commenced on the 24th day of October, 1904, on a judgment theretofore recovered on certain demand notes executed by said company, under date of March 23, 1898, and that, by reason of the foregoing facts, the action was not commenced within the time limited by law. The court found the facts substantially as alleged in this affirmative defense, found that the action

was not commenced within the time limited by law, and entered a judgment of dismissal. From that judgment, the plaintiff has appealed.

From the foregoing statement it will appear that the only question presented on this appeal is, when does the right of action in favor of the creditors of an insolvent corporation, as against its stockholders, to enforce the stock subscription liability, accrue? We are of opinion that such right of action accrues, at least, as soon as the corporation disposes of all of its property and assets, ceases to be a going concern and becomes notoriously insolvent, and that is as far as we are required to go in this case. In *McKay v. Elwood,* 12 Wash. 579, 41 Pac. 919, the court said:

"We think, also, that from the time of an assignment by a corporation, the obligation of each stockholder to make payment of the amount remaining unpaid on his subscription to stock, or so much thereof as might be necessary to satisfy the indebtedness of the corporation, must be treated as a debt that is presently due, because after the assignment no power remains in the directors to make a call, and it would be contrary to all considerations of right to permit the stockholder thereby to avoid making payment for his stock as against creditors of the corporation."

See, also, Cook, Corporations (5th ed.), 200; 26 Am. & Eng. Ency. Law (2d ed.), 1049; *Terry v. Anderson,* 95 U. S. 628, 24 L. Ed. 365; *Hatch v. Dana,* 101 U. S. 205, 25 L. Ed. 885; *West v. Topeka Sav. Bank,* 66 Kan. 524, 72 Pac. 252; *Hodges & Wilson v. Silver Hill Min. Co.,* 9 Ore. 200; *Swearingen v. Sewickley Dairy Co.,* 198 Pa. St. 68, 47 Atl. 941; *Hardware Co. v. Tintic Milling Co.,* 13 Utah 423, 45 Pac. 200; *Franklin Sav. Bank v. Bridges* (Pa. St.), 8 Atl. 611.

In *Bennett v. Thorne,* 36 Wash. 253, 78 Pac. 936, this court held that a right of action accrued in favor of the receiver of an insolvent banking corporation to recover the superadded or statutory liability of the stockholders upon the declared insolvency of the bank, and that the statute of

limitations commenced to run from that date. Unless there is a distinction between the right of action to enforce the statutory liability of stockholders and the right of action to enforce the stock-subscription liability, that case is controlling here. Counsel for appellant claim there is a distinction, and that such distinction was recognized by this court in *Bennett v. Thorne.* In support of this contention, counsel quote from the opinion in that case as follows:

"As we have above indicated, it is the respondent's contention that the statute of limitations did not begin to run against the liability until the date of the decree ordering the assessment, and a number of cases are cited in support thereof. The cases cited, however, with one exception, are not in point. They relate to the stock subscription liability, or to national bank cases, both of which are governed by entirely different principles from those controlling the liability created by the constitution. The necessity of a call and assessment, on unpaid stock subscriptions, is based solely on the express contract of the parties. *Scovill v. Thayer,* 105 U. S. 143; *Terry v. Anderson,* 95 U. S. 628. The contract of the subscriber to the stock is that he will pay upon a demand by the proper authorities of the corporation. And it has been invariably held that, as to the stock subscription liability, a call or demand must precede the suit."

The rule there stated is no doubt correct, but the necessity for a call or demand is not as general as might be inferred from the language used. Bal. Code, § 4262, provides as follows:

"The stockholders of any corporation formed under this chapter may, in the by-laws of the company, prescribe the times, manner, and amounts in which payments of the sums subscribed by them, respectively, shall be made; but in case the same shall not be so prescribed, the trustees shall have the power to demand and call in from the stockholders the sums by them subscribed, at such time and in such manner, payments or installments, as they may deem proper."

And as between the corporation and its stockholders, so long as the corporation is solvent and a going concern, this statute

will doubtless control. But when the corporation disposes of all its property, ceases to be a going concern and becomes insolvent, the whole situation is changed, the liability of the stockholder becomes fixed and the unpaid stock subscription becomes immediately due. In *Adamant Mfg. Co. v. Wallace,* 16 Wash. 614, 48 Pac. 415, the court said:

"The next objection was that there was no allegation in the complaint that any demand or call was ever made by the trustees of the defendant corporation, or otherwise, or at all, upon the individual defendants, or upon any of them, for the sums respectively subscribed by them and alleged by the complaint not to have been paid, citing *Elderkin v. Peterson,* 8 Wash. 674, (36 Pac. 1089), which case was also an action by a receiver against a stockholder, and is therefore not in point. The creditor has no control over the corporation or its business; is not supposed to know whether calls have been regularly made, or made at all. So it will be readily seen that while this may be a duty of the corporation itself in suing one of its members over whom it has control, the duty should not be imposed upon a creditor. That no calls are necessary before an action can be commenced by a creditor against the stockholder, see 2 Morawetz on Private Corporations, § 821, where the distinctions above referred to are commented on at length. We think the complaint in all respects was sufficient."

See, also, Cook, Corporations (5th ed.), § 108, and authorities above cited. We see no reason why the right of action to enforce the stock subscription liability should not accrue as soon as the right of action to enforce the statutory or superadded liability, and in law we think there is none.

The appellant contends, however, that his action against the stockholders is based on his judgment against the corporation, not upon the original corporate indebtedness which is merged in the judgment, and that his cause of action against the stockholders did not accrue until the recovery of his judgment against the corporation and the return of *nulla bona,* or, at least, until the recovery of the judgment. If this be true, it must be for one of two reasons; first, because his

right of action against the stockholders did not accrue until he exhausted his legal remedies against the corporation by the recovery of a judgment and a return of *nulla bona;* or, second, because the stockholders continue liable as long as a liability exists against the corporation, and cannot interpose the statute of limitations as a defense, unless the statute has also run in favor of the corporation. What we have said is sufficient to demonstrate the fallacy of the first proposition. An action of this kind is in the nature of a creditor's bill, and in the absence of statute, it is not necessary to first obtain a judgment against the corporation, when it is otherwise shown that such a proceeding would be utterly futile and subserve no useful purpose. *Benham v. Ham,* 5 Wash. 128, 31 Pac. 459, 34 Am. St. 851; Cook, Corporations, § 200, and authorities above cited. Nor does the liability of the stockholder continue as long as the creditors may be able to keep their obligations alive against the corporation. As said by the court in *Swearingen v. Sewickley Dairy Co.,* *supra.*

"When does the right of action by the creditors for unpaid subscriptions accrue? Such subscriptions are a fund in the hands of the stockholders charged with a trust for the payment of the corporate debts. This trust does not depend on any statute, but is deduced on general principles of equity from the premise that the capital is publicly pledged to those who deal with the corporation for their security. *Lane's Appeal,* 105 Pa. St. 49, 51 Am. Rep. 166. So long as the corporation is solvent, the whole subscription is due in accordance with its terms, and is payable when and as called by the corporation. But, when the corporation becomes insolvent, the contract between it and the subscriber is terminated, and his debt to it then is only for such part of his subscription as is required to pay the corporate debts. It is a debt, not to it in its own right, but in the right of its creditors. But it would seem that the status of the stockholder as holder of a fund liable at least contingently to the creditors, must be fixed at the time and by the fact of the ascertainment of insolvency. It is the general rule that insolvency fixes the rela-

tive rights of all the parties concerned. From that moment the unpaid subscriptions became part of the assets for payment of the creditors. It is true they are special, or, as they may be called, reserved, assets, not to be put in distribution until the insufficiency of the other assets is shown, but this is no reason why the creditors may not proceed at once to show that fact. In *Franklin Sav. Bank v. Bridges* (Pa. St.), 20 W. N. C. 43 [8 Atl. 611], already cited, it was said by Albright, J., in entering a nonsuit which was sustained by this court: 'Conceding that the unpaid subscription, when realized, would be a fund to be held for the benefit of the depositors and other creditors of the corporation, it is apparent that as soon as the assignment was made, the depositors and creditors were entitled, through the assignee, to demand that the unpaid subscriptions should be paid. . . . The creditors were at that time in the position of one to whom an obligation is due on demand, or who can make demand upon the doing of an·act himself.' In *Terry v. Anderson,* 95 U. S. 628, the charter of a bank provided that the stockholders should be individually liable for the bills or notes issued by the bank. The main question was on the constitutionality of the statute of limitations reducing the time for bringing suit, but it was also held that not only this liability, but the equitable liability for unpaid subscriptions to stock arose when the bank stopped payment, and the statute began to run from that time, though it antedated by nearly a year and a half the assignment by the bank for the benefit of its creditors."

See, also, *West v. Bank, supra.*

The final contention of the appellant is that his right of action did not accrue until notice of the fact that there were unpaid stock subscriptions was brought home to him or his assignor. His assignor was a creditor of the corporation, and as such had access to its books, and the law afforded him ample opportunity to ascertain who were stockholders and what amount of the stock subscribed remained unpaid. Bal. Code, § 4269. Mere ignorance on the part of a plaintiff with respect to his rights, where there is no fraud or conceal-

ment, does not suspend the operation of the statute of limitations. 19 Am. & Eng. Ency. Law (2d ed.), 213, 214.

We will add in conclusion that the statute of limitations commenced to run in favor of the respondents as early as April 1, 1894, under the facts disclosed by this record, and that the bar of the statute is a complete defense to the action. The judgment is therefore affirmed.

Mount, C. J., Fullerton, Hadley, Crow, Root, and Dunbar, JJ., concur.