[No. 11904.   Department Two.   July 11, 1914.]

THE CITY OF MONTESANO, *Plaintiff and Appellant*, v.
F. L. CARR, *Defendant and Appellant*.[1]

ACTIONS—DISTINCTION BETWEEN LAW AND EQUITY. The statutory
abolition of the distinction between actions at law and in equity does
not relieve the courts of the necessity of recognizing the inherent
distinctions as an aid in the determination of the rights of a party.

CORPORATIONS—INSOLVENCY — UNPAID STOCK SUBSCRIPTIONS — AC-
TIONS—RIGHTS OF CREDITOR. A single creditor of an insolvent cor-
poration cannot maintain an action at law, for plaintiff's exclusive
benefit, against a stockholder to recover on his unpaid stock sub-
scription.

SAME—ACTIONS—LAW OR EQUITY—PRAYER OF COMPLAINT. An ac-
tion at law by one creditor of an insolvent corporation to recover the
unpaid subscription of a stockholder is not to be converted into an
equitable action for the benefit of all the creditors by a prayer in
the complaint for such other relief as may be just and equitable, espe-
cially where the plaintiff insists upon a money judgment for its ex-
clusive use and benefit.

Cross-appeals from a judgment of the superior court for
Chehalis county, Irwin, J., entered September 20, 1913, in
an action by a creditor to recover an unpaid subscription to
the capital stock of an insolvent corporation, after a trial
to the court.   Reversed.

*O. M. Nelson,* for appellant City of Montesano.

*Morgan & Brewer* and *Gordon & Easterday,* for appel-
lant Carr.

PARKER, J.—As we proceed, we think it will appear that
this cause was commenced and prosecuted to final judgment
in the superior court by the plaintiff city as a pure action
at law, seeking only recovery, for its own exclusive use and
benefit, of a personal money judgment against the defendant
Carr.   The city seeks recovery of such judgment against
Carr upon the ground that it is a creditor of the Monte-

[1]Reported in 141 Pac. 894.

sano Planing Mill Company, an insolvent corporation, and that Carr is indebted to that company in the sum of $1,000 for an unpaid stock subscription made by him to its capital stock.

After trial before the court without a jury, a personal money judgment was rendered by the court against Carr, not in favor of the city for its own use and benefit, but in favor of the creditors of the Montesano Planing Mill Company, including the appointment of a receiver for that company, to enforce payment of the judgment by execution, if not voluntarily paid by Carr, and distribute the proceeds thereof among the creditors of the Montesano Planing Mill Company. Carr has appealed from the judgment, seeking reversal thereof, upon the ground, among others, that the trial court erred in permitting the city to maintain an action for its own benefit, and in rendering the judgment, in view of the fact that the cause was commenced, and at all times prosecuted by the city, as a law action for its exclusive use and benefit. The record before us plainly shows that Carr is entitled to here urge reversal of the judgment upon these grounds. The city has also appealed from the judgment, seeking reversal thereof and the rendering of a judgment in its favor against Carr for its exclusive use and benefit.

The facts determinative of the city's right to maintain this action we may regard as not in dispute. It is of no material consequence here whether we regard the question as being presented by the claim of error made by counsel for Carr on the trial court's overruling of his demurrer to the city's third amended complaint or by the claim of error made by counsel for Carr in the rendering of the judgment by the court upon the evidence presented at the trial. The controlling facts touching this question may be summarized as follows:

The Montesano Planing Mill Company is a domestic corporation of this state. In December, 1909, it became in-

solvent, and passed into the hands of a receiver appointed by the superior court of Chehalis county for the purpose of winding up its affairs, reducing its assets into money, and distributing the same to its creditors.   The receiver proceeded accordingly, administered his trust to completion, as he and the court evidently then thought, resulting in the payment of a dividend of eight per cent to the creditors, and the discharge of the receiver by the court in January, 1911. The city became a creditor of the Montesano Planing Mill Company by reason of being compelled to pay for certain lumber used in a public improvement which had been constructed by the Montesano Planing Mill Company for the city, because of the failure of that company to pay for the lumber, the city having previously paid that company for the construction of the improvement.   Just when the city thus became a creditor of the Montesano Planing Mill Company is not rendered certain by the record before us, though we assume, for argument's sake, as counsel insist, that the city became such creditor after the discharge of the receiver. The city has not reduced its claim against the Montesano Planing Mill Company to judgment.   This action constitutes its first effort to secure payment of its claim.

Thereafter, in November, 1910, the city commenced this action against Carr, as sole defendant, resting its claim upon the facts we have summarized and assumed as true, as claimed by counsel for the city, and also upon the alleged fact that Carr is indebted to the Montesano Planing Mill Company in the sum of $1,000, and interest thereon, upon an unpaid subscription made by him to the capital stock of that company.   The entire prayer of the city's third amended complaint, the one upon which the trial proceeded after the overruling of Carr's demurrer thereto, reads as follows:

"Wherefore plaintiff prays for judgment in the sum of $1,687.44, with interest thereon at six per cent. against the said F. L. Carr, and for such other and further relief as to the court may seem just and equitable."

So far as our law recognizes a distinction between an action at law and a suit in equity, it is manifest that counsel for the city has, at all times up to the moment of rendering judgment in this action, prosecuted the same upon the theory that this is a pure law action. Indeed, his very appeal to this court but emphasizes this fact, wherein he is still seeking a personal money judgment against Carr, and insisting that the trial court erred in not awarding the city such a judgment upon the trial for the exclusive use and benefit of the city. At no time has counsel for the city waged the action in the interest of the other creditors of the insolvent Montesano Planing Mill Company, nor is there anything in the record suggesting that the action would assume this form until after the trial and submission of the cause to the court for final decision, when the court, of its own motion, rendered the judgment against Carr and in favor of the creditors generally of the Montesano Planing Mill Company, appointing a receiver to enforce payment of the judgment, and distribute the proceeds thereof among such creditors. Carr has not been called upon at any time from the beginning to the end of this action to defend against the rendition of a judgment of the nature here entered against him by the court of its own motion.

While the distinction between actions at law and suits in equity as to the mere form no longer exists in this state, the courts nevertheless are, of necessity, compelled to recognize certain inherent distinctions between them. *Thompson v. Caton*, 3 Wash. Terr. 31, 13 Pac. 185; *Distler v. Dabney*, 7 Wash. 431, 35 Pac. 138, 1119; *Barto v. Seattle & International R. Co.*, 28 Wash. 179, 68 Pac. 442; *Overlock v. Shinn*, 28 Wash. 205, 68 Pac. 436. It is often necessary to recognize this distinction as an aid to the determination of the question of the right of a party to prosecute an action for his exclusive benefit, and this, we think, is the real question here involved.

In the early case of *Burch v. Taylor*, 1 Wash. 245, 24

Pac. 438, this court had occasion to consider the question of the right of a creditor of an insolvent corporation to sue for, and recover the debt due him from the corporation by an action at law against a stockholder of the corporation to the extent of his unpaid stock subscription. The action was so commenced and prosecuted to a personal money judgment rendered against the stock subscriber in a justice court. The defendant appealed to the territorial district court, where the judgment of the justice court was reversed. On appeal from the decision of the district court to this court, the decision of the district court was affirmed upon the theory that an action at law could not be maintained by a creditor of an insolvent corporation against one of its stockholders upon an unpaid stock subscription for the exclusive use and benefit of such creditor. Justice Stiles, speaking for the court, said:

"The main question involved in this case is: Does § 2434 of the Code of Washington authorize an action at law by a creditor of a corporation against a stock subscriber? This inquiry, if determined in the negative, would oust the justice's court of jurisdiction. The second clause of § 2434 is as follows: 'Each and every stockholder shall be personally liable to the creditors of the company to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise,' which is simply a declaration of the American doctrine of the common law of corporations as held, almost without exception, in the decisions of the courts. Thomp. Liab. Stockh., §§ 25-37; Cook, Stocks, § 199, and note 1; *Sawyer v. Hoag*, 17 Wall. 610."

and, after holding that unpaid stock subscriptions are a trust fund for the payment of creditors, continued:

"To enforce a right to participate in a trust fund requires proceedings in equity, unless there be peculiar and explicit statutory provisions to the contrary. So in this class of cases the action must be in equity where the creditor desires himself to be the actor in the proceedings to collect and apply subscriptions. Therefore, in the case at bar, the justice had no jurisdiction of the subject-matter of the action, and the judgment must be affirmed."

We note that the exact language of the early statute quoted in that decision is preserved as a part of our present law in Rem. & Bal. Code, § 3698 (P. C. 405 § 43), which is, in substance, the same as that found in § 4, art. 12 of our state constitution.

*Wilson v. Book*, 13 Wash. 676, 43 Pac. 939, was also a law action by a creditor of an insolvent bank, seeking recovery for his own benefit from a stockholder of the bank upon the stockholder's secondary liability; that is, the liability imposed upon the stockholder by § 11, art. 12, of the state constitution, beyond what he might owe upon his stock subscription. The question was there again examined by the court and the former holding adhered to, the trust theory being applied as where the recovery was sought upon an implied stock subscription. Chief Justice Hoyt, speaking for the court, said:

"A method which would allow a single creditor to maintain an action at law against one or more of the stockholders for his own benefit would be so unjust to other creditors and might result in such annoyance to the stockholders, that only the most positive language would justify the courts in holding that the liability might be thus enforced. So to hold would enable one creditor to obtain more than his share of the fund which should be derived from this liability. Not only would such a holding allow a creditor to do this, but under it a stockholder could be subjected to a separate suit at the instance of each one of the creditors of the corporation."

The question was again examined by this court in *Watterson v. Masterson*, 15 Wash. 511, 46 Pac. 1041, and the former decisions adhered to, after earnest argument by learned counsel to induce the court to depart from its former holdings. Our attention is called to the decisions in *Adamant Manufacturing Co. v. Wallace*, 16 Wash. 614, 48 Pac. 415; *New York National Exchange Bank v. Metropolitan Sav. Bank*, 28 Wash. 553, 68 Pac. 905; and *Chilberg v. Siebenbaum*, 41 Wash. 663, 84 Pac. 598. These decisions

are not in the least inconsistent with the conclusions reached by the court in the above noticed cases. These decisions simply recognize the right of a creditor to maintain a suit in equity in the interest of himself and all other creditors of an insolvent corporation against a stockholder of such corporation, to compel payment of his unpaid stock subscriptions, or payment of the additional liability which the constitution imposed upon him as a stockholder; quite a different matter from the claimed right of a creditor to ' maintain an action at law for his own exclusive benefit against a stockholder upon his liability to the corporation as such. In the last cited case, at page 669, it is said: "An action of this kind is in the nature of a creditor's bill." While speaking generally, this is a correct statement. We think the real nature of the action is that of a creditor's bill where the plaintiff prosecutes for himself and all other creditors, in view of the fact that he is seeking payment of his claim from a trust fund against which his rights are not preferred, but are the same as other creditors.

We do not overlook the holding of this court in *Dunlap v. Rauch*, 24 Wash. 620, 64 Pac. 807. In that case, the action, it is true, was originally commenced by the creditor against the stockholder upon his unpaid stock subscription for the exclusive use and benefit of the creditor; but, while the case was pending, the plaintiff creditor gave notice to the defendants and filed a written offer, requesting that an order be entered in the cause, substituting one Beach, the receiver of the corporation, as plaintiff, Beach having been appointed receiver of the corporation pending the action, in another action, and offering to assign any judgment recovered in the action to the receiver, to the end that the proceeds thereof might be equitably distributed among the creditors. This was a voluntary conversion of the law action into an equitable one for the benefit of all creditors before the rendition of judgment in that action. Thereafter, the cause proceeded, and judgment was rendered ac-

cordingly.   The city, plaintiff and appellant in this action, has at no time ever assumed such an attitude.   It not only prosecuted this action for its own benefit as a pure law action up to the very moment of the rendition of the judgment, but continues in that attitude by appealing from the judgment rendered, and claiming error on the part of the learned trial court in not rendering judgment in its favor for its own exclusive use and benefit.   We are of the opinion that the city has no legal right to maintain this action.   The decisions of this court in *Elderkin v. Peterson*, 8 Wash. 674, 36 Pac. 1089; *Mitchell v. Jordan*, 36 Wash. 645, 79 Pac. 311; and *Cox v. Dickie*, 48 Wash. 264, 93 Pac. 523, holding that a receiver for an insolvent corporation may maintain an action either at law or in equity to recover from a stockholder upon his liability as such are not inconsistent with the conclusion we here reach.   Whatever the nature of the action may be, when prosecuted by a receiver, it is, of course, for the benefit of all creditors of the insolvent corporation.

We have not lost sight of the fact that the city's prayer for a personal money judgment against Carr concludes with the words "and such other and further relief as to the court may seem just and equitable."   Whatever construction might be placed upon this language of the prayer, under different circumstances, it seems to us quite plain that it does not result in converting this action into an equitable action for the benefit of the city and the other creditors of the insolvent Montesano Planing Mill Company, in view of the manifest theory upon which counsel for the city has waged this action.   Indeed, his attitude constitutes, in substance, an assertion that his general prayer for relief had no such meaning.   He is still consistently insisting here that the judgment of the trial court was erroneous in so far as it was rendered in favor of the creditors instead of in favor of the city for its exclusive use and benefit.

As to the appeal taken by the city in this cause, little need be said, it being practically disposed of by our discussion

above made, which necessarily leads to the conclusion that the city cannot recover from Carr in the manner here sought upon his unpaid stock subscription if, in fact, he is indebted to the Montesano Planing Mill Company upon that subscription. Other contentions made by counsel for the city upon its appeal, we think, are wholly without merit and do not call for discussion.

If it be suggested that the judgment of the learned trial court was, in any event, a correct disposition of the cause upon the merits, which theory counsel for the city is combating even at this time, we think such suggestion may be answered in the negative by the fact that Carr, as defendant, was not called upon to defend, and was not defending an action calling for any such judgment. We conclude that the judgment must be reversed and the action dismissed.

It is so ordered.

FULLERTON, MORRIS, and MOUNT, JJ., concur.