[No. 2581.   Decided July 8, 1897.]

SAMUEL DIXON, *Respondent*, v. FREDERICK BAUSMAN, *as Receiver of Rainier Power and Railway Company, Appellant.*

INTERROGATORIES TO JURY — CONCLUSIVENESS OF ANSWERS — INJURY TO EMPLOYEE — DEFECTIVE APPLIANCES — CONTRIBUTORY NEGLIGENCE.

A defendant cannot urge the objection that there was no evidence to support the verdict against him, after he has propounded interrogatories to the jury upon points necessary to be established to sustain a judgment against him, and the findings of the jury thereon are adverse to defendant.

The receiver of an electric railway company is liable for injuries to an employee resulting from the breaking of a trolley wire, which he was repairing, and which had been weakened by having kinks in it pounded out, when the condition of the wire was known by the master and not by the servant.

An employee is not guilty of contributory negligence as a matter of law, from the fact that, in drawing on a trolley wire for the purpose of getting it into proper position, he had mounted a box upon top of a construction car, and, owing to the rotten condition of the wire, which was unknown to him, it parted and threw him to the ground, when the methods and appliances used by him were such as were usually employed in that kind of work, and, while his elevated position was not necessary for all the de-

tails of the repairs, it was necessary to the proper completion of the work.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Affirmed.

*Bausman, Kelleher & Emory*, for appellant.

*John E. Humphries, William E. Humphrey, E. P. Edsen*, and *Remsberg & Atkinson*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—This is a case of personal injury sustained by the plaintiff, while in the employ of the defendant, by the breaking of a trolley wire which he was attempting to draw into position by means of a block and tackle. The span wire, which stretched from poles on the side of the street to the trolley wire, had become unfastened from the trolley wire at a curve, in consequence of which the trolley wire had sagged, while the span wire had fallen upon the ground. It was in pulling the trolley wire out to its proper place so that the span wire might meet and be fastened to it that the plaintiff was injured by the break.

There is no question that the injury was inflicted and that it was severe enough to warrant the amount of judgment obtained, testimony showing conclusively that the plaintiff by reason of the accident had permanently lost the use of his lower limbs, and that he sustained numerous other injuries. There is no error alleged in the instructions of the judge, the admission of testimony, the refusal to admit testimony, or anything of that kind, but the real assignment of error is the refusal of the court to grant a new trial, on the ground of insufficiency of the evidence to justify the verdict.

There are really but two questions in this case for discussion: First, was there such a defect in the wire as the

master would be responsible for; and second, was the respondent guilty of contributory negligence? Many authorities are cited by the respondent, and some few by the appellant, to maintain their respective positions, but we think the summary of the law announced by the appellant may be accepted as the law governing a case of this kind, viz.: first, that the master on the one hand is not an insurer of his servant; second, the master, on the other hand, owes his servant a reasonably safe place to work in and reasonably safe appliances to work with; third, the servant, for his part, owes it to his master to take no unnecessary risks at work; fourth, the servant assumes the risks ordinarily incident to his occupation; fifth, the servant, injured by a defective appliance, must show that the master either knew of the defect, or ought to have known of it, beforehand.

We think this is a fair statement of the law, and on the principles herein enunciated, applied to the testimony in this case, the right of the respondent to recover damages must depend. It is evident from the testimony in this case that the pounding out of kinks in the trolley wire at the point where the accident happened had weakened the wire, and was the cause of the same breaking. This the jury found in answer to special interrogatories, and there is evidence beyond question to sustain the findings. We think there is also evidence that the knowledge of these defects was brought home to the managers of the company. It is stoutly contended by the appellant that this knowledge was not traced to the company, but outside of the evidence in the case, which we have before said we think was sufficient for the jury to pass upon, the defendant submitted certain interrogatories to the jury, among which was interrogatory No. 14, viz.: " Did plaintiff Dixon's employer know of any such kinks at that place? " To which

the answer was "Yes." Again, the same question is answered in the same way in interrogatory No. 18. These interrogatories were propounded, as we have said, by the defendant, and he can not now question the correctness of the answers made by the jury thereto. If the establishment of these points were material to the judgment and there was no testimony upon these points which would be sufficient to sustain the judgment, then it was the duty of the defendant (appellant) to have moved the court for default, but, having submitted these questions to the jury, they must have been submitted upon the supposition that there was testimony upon the subject, and the defendant is bound by the answer. The same thing might be said of the alleged rotten condition of the wire, but, outside of the finding in this case, there was direct and positive testimony sufficient for the jury to act upon in the deposition of witness Newell (p. 146 of the record), who testified that the wire from Lake Union to the car barn clear down town either was rotten or of bad construction. The jury also found that the business of keeping the trolley and span wires in repair on this line of railway was not intrusted to Dixon by his employer up to the time of his injuries, that it was not a part of the duties of Dixon in the employment of the railway company or its receiver to do work repairing the trolley wire or span wire along the line of the railway, but that he was specially ordered or requested to do the particular repairing, where he received his injuries, by Superintendent Denny. These, it may be said, were also interrogatories which were propounded by the defense, and the finding of the jury on such interrogatories is final.

We have examined this testimony with considerable care, and have considered that the only close question in the case is the alleged contributory negligence of respon-

dent.   It seems that in repairing this wire he ran a construction car along the track to the place where the wire was broken, and not being able to reach the wire and fasten it from the top of the car, he placed a box upon the top of the car, and it was from this position that he fell when the wire parted and struck him, and it is contended by the appellant that he unnecessarily increased his peril by using this method of fastening the wire—that had he remained on the ground the wire would not have struck him, and several interrogatories tending to sustain this theory of the case were propounded to the jury, and it is contended that the answers to these interrogatories preclude a judgment in this case; viz.: the jury found in answer to interrogatory No. 11 that he could have tightened the trolley wire sufficiently for the task upon which he was then employed by standing upon the top of the car at the time, and not upon the box, and that in the event of the breaking of the trolley wire when he was standing on the box, he would, in all likelihood, be thrown from the top of the box to the street.   Interrogatory No. 17 was as follows: " Could plaintiff Dixon have done this work more safely by standing on the street and not on the car or box while drawing the trolley wire back from the curve by the block and tackle? "   To which the answer was " Yes, but could not complete his work."

The jury also found that the respondent did not know of the rotten condition of the wire, or that any kinks had been hammered out in the wire, and that he did not know of the faulty condition of the wire in any respect.   Interrogatory No. 10, which was propounded by the defendant, was as follows: " Was plaintiff Dixon, in tightening the wire by use of block and tackle, to stand upon a box or top of car from which he was thrown, in the exercise of ordinary care? "   To which the jury answered " Yes."

And, outside of the fact that we before indicated—that the defendant would be bound by the answer of the jury on interrogatories propounded by him—we think the whole testimony in this case shows that the answer was warranted.  This was the apparatus which was furnished by the company for mending wires, the use of which it sanctioned, and which was commonly employed, and unless we should be able to find that, as a matter of law, regardless of the opinion of the jury, the manner of placing the strain upon this wire constituted negligence, we would be bound to affirm this case.  The witness Alexander testified in substance that there was no place where a party could stand with perfect safety while mending this wire, and that while it might be more safe to stand below, yet he could not stand below and complete the work—that he could stand below and draw it into place, but could not stand below and make the tie—and it was doubtless in contemplation of such testimony as this that the jury answered interrogatory No. 17 to the effect that he could more safely do the work by standing on the street, but that he could not complete the work from such position.

The testimony of John Burroughs (on p. 21, statement of facts) is to the same effect, viz.: that it was not the usual way to do the work to stand on the ground, and that it could not be done in that way, but that the workman had to be up where he could take in the slack.  The testimony of the respondent was to the same effect, and further stated that it was necessary because the top of the passenger car would not be high enough to reach the trolley wire and to work on.

Of, course there is conflicting testimony in many of the points at issue in this case, but the only duty of this court is to ascertain if there was sufficient testimony introduced by the respondent to sustain the judgment or to warrant

the findings or verdict of the jury, and outside of the special findings on the subject of contributory negligence, under all the testimony in this case, we are unable to say that the acts of the respondent constituted contributory negligence, and that, as we before said, being the only question which we deem important, there is nothing left for this court to do but to affirm the judgment.

The fact that this is an action against the receiver, and will constitute the respondent a preferred creditor does not change the law of responsibility of either the appellant or respondent.

Affirmed.

SCOTT, C. J., and ANDERS, GORDON and REAVIS, JJ., concur.