[No. 3705.   Decided   January   7,   1901.]

W. G. MITCHELL et ux., Appellants, v. DAN W. MATHESON et ux., Respondents.

SPECIAL AND GENERAL VERDICT—EFFECT OF INCONSISTENCY—
ACTION BY LANDLORD FOR POSSESSION AND DAMAGES—WHEN
PREMATURELY BROUGHT.

Where the special verdict of the jury shows that plaintiff was not entitled to possession of premises until the 1st day of November, it will control a general verdict in his favor, upon an action instituted the 16th day of October to recover possession and for damages, and warrant the court in granting a new trial for the reason that the action had been prematurely brought.

SAME—MATERIALITY OF SPECIAL VERDICT.

Where plaintiff's right to have premises vacated by a tenant prior to the expiration of the lease is conditioned upon a sale of

the premises and thirty days' written notice to the tenant to re-move therefrom, a special verdict by the jury that plaintiff was entitled to possession of the premises on a certain date, is not immaterial and a mere conclusion of law, when the notice to the tenant required him to surrender possession "within thirty days from date, or as soon thereafter as you have completed the harvesting of your crop," and the jury, in answer to another inter-rogatory, have found that the tenant finished harvesting his crop on the day prior to the one on which they find plaintiff's right of possession to accrue.

LANDLORD AND TENANT—WAIVER OF NOTICE TO QUIT.

Where defendant is entitled to thirty days' written notice to vacate premises, a letter from him refusing to vacate and advis-ing plaintiff's attorneys that the sooner they start action the bet-ter it will suit him, does not constitute a waiver of the notice re-quired to be given under his lease.

Appeal from the Superior Court, Lincoln County.—Hon. CHARLES H. NEAL, Judge. Affirmed.

*Myers & Warren,* for appellants.
*Martin & Grant,* for respondents.

The opinion of the court was delivered by

WHITE, J.—This is an appeal from an order granting a new trial. The action was begun to recover possession of certain real property and for damages. At the trial it was stipulated that respondents had yielded possession of the premises, and the damages was the only issue. The respond-ents were lessees in possession, under a lease providing for vacation of the premises in case of a sale thereof. The ap-pellants were purchasers of the premises and assignees of the lease. The jury signed special findings, and a general verdict for appellants for $100. The lower court granted a new trial solely upon the ground of conflict between the general and special verdicts, the order of the court being as follows:

"Wherefore it is hereby ordered, adjudged, and decreed that the verdict of the jury in the above entitled cause be,

and the same is hereby, set aside, and the defendants are hereby granted a new trial on the grounds that the general and special verdicts of the jury are in conflict."

The action was commenced in the superior court of Lincoln county, on the 16th day of October, 1899. It is set forth in the complaint that the defendants entered into possession of the premises by virtue of a written lease, the terms of which were partially set forth. There is no dispute as to the terms of the lease. It was in evidence. By its terms the premises—farm lands— were leased from the 1st of March, 1899, to the 1st of March, 1900, subject to certain covenants, one of which was as follows:

"It is especially provided hereby and agreed upon that the said party of the first part shall have the right to sell this land, or any portion thereof, at any time, and, in the event of any such sale, the said party of the second part is to remove from the premises, or from any such part thereof as may have been sold, on receiving thirty (30) days' written notice to so remove. And it is covenanted and agreed between the said parties hereto that, if such sale shall be made prior to the first day of May, 1899, then, and in that event, the said party of the second part is to be paid for all land ploughed for the purpose of being cropped at the rate of $1.00 per acre, and also to be paid for such grain or other seed as he shall have sown upon such ploughed land at the market value of such seed at the time the same was sown; and he shall be paid for the labor of seeding the same at the rates customary in the district for such work. And for all land ploughed for the purpose of being summer-fallowed $—— per acre shall be paid in addition for each time said summer-fallowed land has been cultivated after being ploughed. And, should such sale of land take place after the first day of May, 1899, then, and in that event, said party of the second part shall have the right to himself and his heirs to harvest the crop, on the conditions above set forth; but in any and all events the crop grown upon this land is the property of the party of the first part, its successors and assigns, until the said rental share thereof has been

delivered over as hereinbefore provided, anything in this agreement to the contrary notwithstanding."

The complaint further alleged:

"5.   That on or about the 10th day of July, 1899, the said United Trust, Limited, a corporation, sold all of the above described land to the plaintiff, W. G. Mitchell, who is now, and ever since said time has been, the owner and entitled to the possession of said premises.

6.   That a few days after said sale and on, to-wit the 20th day of July, 1899, the said United Trust, Limited, a corporation, served written notice upon said Dan W. Matheson that said land and premises had been sold, and said notice required said Matheson to remove from said premises within 30 days after the service of said notice, as provided in the lease aforesaid; and said notice was duly received by said Matheson on or about the —— day of July, 1899, and before the 27th day of said month.

7.   That after the sale of said premises to plaintiff, and on, to-wit, the 8th day of September, 1899, said United Trust, Limited, a corporation, the lessor in the lease aforesaid, for a valuable consideration, duly sold, assigned, transferred, and delivered said lease and all its right, title, and interest therein to the plaintiff, who thereupon became, ever since has been, and now is, the owner thereof.

8.   That thereafter, to-wit, on the 13th day of September, 1899, this plaintiff demanded of defendant that he deliver possession of said premises to plaintiff, which demand was in writing and was received by said Matheson; but said Matheson refused so to do, and notified plaintiff that he would not deliver possession thereof, but that he would hold said premises until the first day of March, 1900.

9.   That the term for which said premises were demised as aforesaid, according to the lease, has terminated, and that said defendants hold over and continue in possession of said demised premises, without the permission of plaintiff and contrary to the terms of said lease; and before the commencement of this action said Matheson *had fully completed his harvesting and threshing on said premises.*

10. That more than 30 days have elapsed since the making of the demands for possession as aforesaid, and the defendants have refused and neglected, and now refuse, to deliver up and surrender possession of said premises.

11. That the monthly value of the rents and profits of said premises is the sum of $100."

These allegations are denied. Evidence was introduced tending to show that between the 26th and 29th days of July, 1899, the lessor notified the defendants in writing, of date July 26, 1899, that it had sold the land described in the complaint. The notice contained the following:

"* * * and we have now to give you notice that we require you to surrender possession of said premises within thirty days from date, *or as soon thereafter as you have completed the harvesting of your crop.* This notice is given you in accordance with the terms of your lease, and we hope to hear from you at an early date that you have arranged to comply herewith."

On September 13, 1899, Myers & Warren, attorneys for the plaintiff, wrote to defendants as follows:

"Dear Sir: The farm which you have leased and are now occupying has been sold to Mr. Mitchell, and the lease assigned to him. We have been retained to secure your removal from the premises. We understand you have 30 days to vacate after notice that the place has been sold, which notice we understand has been served and received by you. We do not desire any litigation over this matter unless necessary, and hope you will vacate the premises without any trouble. We write you that you may have an opportunity to know and understand the condition of the matter before action is begun. We send this by register, that we may be assured of its reception by you."

On September 19, 1899, Mr. Matheson replied to this letter as follows:

"Dear Sir: I am just in receipt of your letter stating that you are retained to secure the removal of me from the

place that I am living on. Now, I do not wish to enter into a law suit; but it seems that I am to be forced into one, or else give up what justly and honestly belongs to me. My understanding when I rented this place was that I. leased it for one year, and that is my understanding yet; so, if your intention is to force me off this fall, the sooner you start your action the better it will suit me."

It will be observed that these letters refer to the notice given by the lessor; and the notice given by the lessor required the defendants to surrender the premises within thirty days from July 26, 1899, *"or as soon thereafter as you have completed the harvesting of your crop,"* leave being given to the defendants by this notice to remain in possession of the premises until the crop was harvested. Under the terms of the lease the lessor was interested in the crop and the lessee was to care for that interest. One of the material questions then was, when was the crop harvested? The lease, according to the allegations of the complaint, was assigned to the appellants on September 8, 1899, and the appellants, therefore, stand in the same position in reference to respondent as did the corporation lessor prior to the assignment of the lease. When the case was submitted to the jury, the plaintiff asked the court to submit the following interrogatories, which request was granted:

"Was the plaintiff entitled to the possession of the land in dispute prior to March 1, 1900, and if so, when?"

"What was the rental value of the premises in dispute from the time plaintiff was entitled to possession of the same until March 1, 1900?"

To the first question the jury answered, "November 1, 1899;" to the second question, "One hundred dollars." The defendants also asked the court to submit certain questions, and this request was granted. The questions so submitted, with the jury's answers, were as follows:

"At what time, if at all, was the 30 days' notice in writing mentioned in the lease given by plaintiff to the defendants or either of them? Answer. September 19, 1899."

"On what day did defendant finish harvesting his crop raised on the land in question during the year 1899? Answer. October 31, 1899."

"What is the date of the sale, if sale was made of the premises in question, to this plaintiff? Answer. September 1, 1899."

"Who are the owners of the premises in question now, and who owned it at the date of the commencement of this action? Answer. W. G. Mitchell."

"When did the lease mentioned in the complaint expire? Answer. October 31, 1899."

"When was the conveyance from the United Trust Company to the plaintiff delivered to this plaintiff, if at all? Answer. September 1, 1899."

"At what time during the year 1899 was plaintiff first entitled to the possession of the premises mentioned in the complaint? Answer. November 1, 1899."

The appellants contend that the finding that plaintiff was entitled to possession on November 1, 1899, is immaterial and a mere conclusion of law. We think it became material under the notice to surrender the premises, to determine when the respondents had completed harvesting their crop. The jury found that that was on the 31st day of October, 1899, and from that fact found that the plaintiff was entitled to possession on November 1, 1899. These findings are not conclusions of law, but are facts deducible from the evidence. The appellants submitted the interrogatory which drew forth the answer, "November 1, 1899," and the establishment of the right of possession of the appellants was one of the principal questions in issue. The appellants having submitted this question to the jury, it must have been submitted upon the supposition that there was testimony upon the subject, and the appellants are bound by the answer. *Dixon v. Bausman,* 17 Wash.

304 (49 Pac. 540). Special findings control a general verdict when they are inconsistent with it. *Silsby v. Frost, 3* Wash. T. 388 (17 Pac. 887).

This action was commenced on October 16, 1899. According to the special findings of the jury, the appellants were not entitled to possession of the premises until November 1, 1899. The action was prematurely brought under this finding. The letter of the defendant Matheson to the attorney of the plaintiff, dated September 19, 1899, did not waive the notice required to be given under the lease, or the notice that was actually given and recognized by the appellants in the letter of their attorneys of date September 13, 1899. There was no abuse of discretion in setting aside the verdict and granting a new trial.

The judgment and order of the court below in granting a new trial is therefore affirmed.

DUNBAR, C. J., and REAVIS, FULLERTON and ANDERS, JJ., concur.