[No. 6770.   Decided January 15, 1908.]

## E. B. Cox, *as Receiver of the Washington Food Company, Appellant*, v. J. P. Dickie *et al., Respondents.*[1]

CORPORATIONS—SUBSCRIPTIONS TO STOCK—ACTIONS TO ENFORCE—DEFENSES—ESTOPPEL.  It is no defense to an action by the receiver of an insolvent corporation, brought for the benefit of creditors against stockholders on their unpaid stock subscriptions, that the stock was purchased bona fide as fully paid, that the stock was not fully subscribed, or the corporation a legal one, or that they subscribed on false representations believing that the company was not in debt; defendants being estopped to set up such defenses as to creditors.

SAME—NOTICE OF ASSESSMENTS—SUFFICIENCY.  Under Bal. Code, § 4262, requiring notice of assessments on unpaid stock to be given personally or by publication, notice by the receiver of an insolvent corporation, given by mailing and publication, as ordered by the court, is sufficient.

SAME—ACTIONS—PARTIES.  The receiver of an insolvent corporation may join all the stockholders in an action to recover the amount of their unpaid stock subscriptions.

SAME—SUBSCRIPTIONS—NAME OF COMPANY.  A change in the name of a corporation does not release subscribers to the capital stock, where the subscriptions were given in the name at first intended to be used, but were intended for and in fact subscriptions to the company afterwards incorporated under another name, the two being one and the same company.

Appeal from a judgment of the superior court for King county, Albertson, J., entered March 14, 1907, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, dismissing an action upon the unpaid subscriptions to corporate stock.   Reversed.

*H. R. Clise*, for appellant.

*Ira Bronson* and *D. B. Trefethen*, for respondents Dickie *et al.*

*Shank & Smith*, for respondent Crossett.

[1]Reported in 93 Pac. 523.

MOUNT, J.—This action was brought by the appellant as receiver of the Washington Food Company, against a large number of defendants, upon their unpaid stock subscriptions in that company. The cause was tried to the court without a jury, and findings were made to the effect, that the Washington Food Company was not legally incorporated because the articles of incorporation were not executed and filed as required by law and the capital stock was not fully subscribed; that the defendants subscribed for their stock believing that there was no indebtedness against the corporation, and that the amount paid for the stock, being one-half the par value thereof, was the limit of liability thereon because the stock was represented to be, and was, denominated "treasury stock fully paid and nonassessable." For these reasons the action was dismissed. The receiver has appealed from the order of dismissal.

The facts in the case are substantially as follows: In the year 1903 certain of the defendants, desiring to organize a company for the manufacture of breakfast foods, in the city of Ballard, called public meetings in that city wherein the advisability of organizing such a company was discussed. After several of these meetings it was decided to incorporate such a company, and the persons who were to act as trustees thereof were elected at one of these meetings. The name of the corporation first adopted was the "Honeyed Flake Food Company." Subscriptions for the capital stock thereof were solicited and made under that name, but later, on or about December 23, 1903, it was decided to incorporate under the name of the Washington Food Company, and articles of incorporation were prepared, executed, and acknowledged under that name. These articles were executed in triplicate, one copy filed in the auditor's office of King county, where the principal office was located, one copy sent to the secretary of state at Olympia, and the other was kept by the company. These articles were not exact copies because some of the

copies contained more names of incorporators than others. More than three of the same persons, however, executed all of the copies. The articles provided that the capital stock of the company was $100,000, divided into two thousand shares of the par value of $50 each. The stock was not fully subscribed, and subscriptions were being taken therefor both before the articles were filed and afterwards. Each person subscribing for stock was required to pay $25 per share in cash, with the agreement that the stock was thereby fully paid and nonassessable.

After certain subscriptions had been made, and at a public meeting attended by stockholders and others, the trustees were instructed to purchase a site and let a contract for the erection of a building thereon, which the trustees did. Subsequently the building was completed, and machinery purchased and the same put into operation. During all this time subscriptions for stock were being made on terms as above stated, the total subscriptions amounting to nine hundred and seventeen shares. In the erection of the building and operation thereof, the company became largely indebted, and on December 28, 1904, the appellant was appointed receiver of the property and effects of the corporation, by the superior court of King county. The receiver qualified, and after exhausting the assets of the corporation, there was still about $7,000 of indebtedness due the creditors of the corporation. Thereupon the superior court by order directed the receiver to collect by suit from the stockholders the balance of the unpaid stock held by them, and to publish a demand therefor in the Seattle Post-Intelligencer, and to mail a copy of such demand to each of the stockholders at his postoffice address, as shown by the books of the company. This was done, and afterwards this action was begun.

The defense is based upon the points stated in appellant's brief as follows: (1) The stock was purchased *bona fide* as treasury stock at a fixed value; (2) fraudulent misrepresenta-

tions induced the subscriptions to stock, there being no sufficient circumstances to create an estoppel or waiver; (3) no full subscription to the capital stock of the company; (4) trust fund theory not applicable to this case since there is no showing that the creditors relied on the stock subscriptions; (5) defect of organization of the company: (6) no notice of call for stock subscriptions; (7) this suit should have been instituted as a separate proceeding against the stockholders instead of being made a joint action; (8) there should be no liability against those whose names appeared in the Honeyed Flake Food Company subscription list; (9) the receiver should have sued for only so much of the unpaid subscription as was necessary to pay for the debts of the company; (10) all of the stockholders should have been made parties defendant under the court's order.

The first five of these defenses may be considered together. It must be remembered that this is not an action by the corporation to enforce collection of subscriptions for stock or its contracts with its subscribers, but is an action brought by a receiver, under order of the court, to enforce such subscriptions for the benefit of creditors. As between the corporation itself and the stockholders all these defenses would probably be good, but as between the stockholders and the creditors of the corporation another rule prevails. *Adamant Mfg. Co. v. Wallace*, 16 Wash. 614, 48 Pac. 415. In such cases,

"It is no defense to a suit by a creditor to recover his debt out of an unpaid subscription, that the defendant was induced to subscribe to the stock by fraudulent misrepresentations of the agent of the corporation, or by an agreement which the corporation had failed to carry out, or that the corporation was irregularly organized or organized for an illegal purpose, or has been dissolved; nor can a stockholder set up informalities in the issue of the stock if the corporation had the power to create it, though he may show that the stock

is void as having been issued in excess of the limit imposed by the charter." 26 Am. & Eng. Ency. Law (2d ed.), p. 1011. See, also, 10 Cyc., pp. 244 and 249; *Mitchell v. Matheson*, 23 Wash. 723, 63 Pac. 564; *Cole v. Satsop R. Co.*, 9 Wash. 487, 37 Pac. 700, 43 Am. St. 858.

Under this rule the trial court was clearly in error in basing the judgment of dismissal upon the facts found as stated above. Such facts if true did not constitute a defense in this action, because the stockholders were estopped to say that the corporation was not a legal one, or that they had a contract with the corporation to purchase its stock at fifty per cent of its par value, or that they subscribed for its stock believing the company was not in debt. The receiver in this action represents the creditors. *Mitchell v. Matheson, supra*.

Respondents also contend that there was no personal notice of a call for stock subscriptions, and that for this reason the judgment must be sustained. The statute provides:

"In all cases notice of each assessment shall be given to the stockholders personally, or by publication in some newspaper published in the county in which the principal place of business of the company is located." Bal. Code, § 4262 (P. C. § 7064).

It was held by this court in *Elderkin v. Peterson*, 8 Wash. 674, 36 Pac. 1089, that the notice required by this section applies to assessments made by the court against stockholders, but neither the statute nor the decision in *Elderkin v. Peterson* requires personal notice. Constructive notice by publication may be substituted for personal notice. The proof in this case shows that the court ordered the receiver to collect the unpaid subscription, and directed notice by publication and by mail. The receiver testified that such notice was given, that he had a notice published as required by the order, and that he mailed a letter containing a copy of the same to each of the stockholders as directed by the order. It is true that a large number of the defendants testified that they did not

receive such letter or know of the publication, but actual personal notice was not required. The proof was therefore sufficient upon the question of notice.

Respondents next contend that a separate action should have been brought against each stockholder. It is true this court held in *Elderkin v. Peterson, supra,* that the receiver may bring separate actions in cases like this, but we have no statute *requiring* separate actions in such cases, and since each defendant in this case was at liberty to make his separate defense, no prejudicial error can be based upon the fact that a large number of defendants were joined in this action. In fact, the form of the action adopted here was beneficial to the defendants by reason of the saving of costs.

It is also contended by the respondents, and especially by respondent Crossett, who appears by separate counsel and separate brief, that there is no liability against those who subscribed for stock on the Honeyed Flake Company subscription list. But the facts show conclusively that the Honeyed Flake Company and the Washington Food Company were the same company. It was intended to give the company the former name, but that idea was abandoned and the latter name chosen as being the more appropriate, and the subscription given to the Honeyed Flake Company was intended for, and in fact was, a subscription to the company which was incorporated as the Washington Food Company. The mere change in the name did not release the subscribers.

In view of the rule that the receiver might have brought a separate action against each stockholder, it is unnecessary to notice the remaining points presented by respondents. For the reasons above stated the judgment of the trial court ·is reversed, and the cause remanded with instructions to enter judgment against each of the defendants as requested by appellant at the time of the trial.

HADLEY, C. J., CROW, and DUNBAR, JJ., concur.

FULLERTON, RUDKIN, and ROOT, JJ., took no part.