[No. 11940.   Department One.   January 7, 1915.]

LOUIS T. SILVAIN, *as Receiver etc., Appellant*, v.
W. D. BENSON *et al., Respondents*.[1]

APPEAL—RECORD—ABSTRACT—NECESSITY.  Where no copy of the abstract was served upon two of the respondents, separately appearing, the appeal will be dismissed as to them.

APPEAL—DECISION—LAW OF CASE.  A decision on a former appeal that the court had acquired jurisdiction, becomes the law of the case and is conclusive on a subsequent appeal.

CORPORATIONS—STOCK SUBSCRIPTIONS—ASSESSMENT — DETERMINATION—RES JUDICATA.  Where the validity of claims against an insolvent bank is determined in the matter of the receivership, upon notice to stockholders in proceedings to assess their stock, without any appeal taken, it cannot be litigated in a subsequent action against the stockholders.

SAME—ASSESSMENT OF STOCK—ACTIONS—DEFENSES.  In an action for the benefit of creditors upon the unpaid stock subscriptions of an insolvent bank to which no certificate had been issued because all of its stock had not been subscribed, it is no defense that the subscriptions were invalid or that the organization had not been completed.

SAME.  Such a defense could not be made where the court had regularly determined the amount of the debts and subscriptions and authorized an assessment and no appeal therefrom had been taken.

SAME—STOCK SUBSCRIPTION—ACTIONS—DEFENSES—ESTOPPEL.  In an action for the benefit of creditors upon the unpaid stock subscriptions of an insolvent bank, it is no defense in favor of certain stockholders that they signed the subscription list without specifying the amount for which they subscribed, and that the amounts were thereafter written in without authority by the promoter; as they are estopped.

SAME—VALIDITY OF SIGNATURE.  It is good defense to an action for the benefit of creditors upon the unpaid stock subscriptions of an insolvent bank that the subscription list was not signed by the defendant, or by any one authorized to sign for him.

APPEAL—REVIEW—ABSTRACTS OF RECORD.  Where the abstract of the evidence contains no evidence of a fact in question, the court will not search the statement of facts for testimony therein to which no reference is made in the abstract.

[1]Reported in 145 Pac. 175.

Appeal from a judgment of the superior court for King county, Albertson, J., entered October 14, 1913, upon granting a nonsuit except as to one defendant, dismissing an action by a receiver to enforce subscriptions to the stock of a corporation, tried to the court. Affirmed in part and reversed in part.

*Shorett, McLaren & Shorett,* for appellant.

*Byers & Byers,* for respondents Hull *et al.*

*John W. Roberts,* for respondent Pederson.

*Alfred Gfeller,* for respondent Jobst.

*John E. Humphries, E. P. Edsen, Geo. B. Cole, Beeler & Sullivan,* and *Peterson & MacBride,* for respondents Humphries *et al.*

*Ernest B. Herald, Channing M. Coleman, McClure & McClure, Nicholas Schmitt, Edward Von Tobel, Emil J. Brandt,* and *Edward C. Kriete,* for respondents Herald *et al.*

MAIN, J.—This action was brought by the receiver of the German-American Bank of Seattle against the defendants as subscribers to the capital stock of the bank. The cause was tried to the court sitting without a jury, and resulted in a judgment for the defendants, except as to the defendant Heinzerling, against whom a judgment was entered in favor of the plaintiff. From this judgment, the plaintiff appeals.

The facts, so far as necessary here to set them forth, are substantially as follows: On or about February 19, 1909, articles of incorporation were acknowledged and copies filed in the office of the secretary of state, in the office of the county auditor of King county, and with the state bank examiner. The annual license fee was paid for the year ending June 30, 1909. On April 15, a meeting of the stockholders was held at the Butler Hotel Annex, in Seattle, Washington. At this meeting there were present, either in person or by proxy, twenty-seven of the persons who had subscribed for the stock.

At this meeting, by-laws were adopted and trustees elected for the ensuing year.

Immediately after the adjournment of the stockholders' meeting there was a meeting of the trustees. At this meeting, officers were elected. The first vice president and cashier were authorized to sign the lease with the Trustee Company for the banking room. The cashier was authorized to proceed to collect the subscriptions to the stock of the bank. Prior to this date, the fixtures, vault, safe, and some other articles necessary to a banking institution had been purchased and were in place. The banking room had been arranged for and a deposit made on the rental.

After the meetings of April 15, certificates of stock were issued to many of the subscribers for stock. This was paid for either by money or note, and in some instances by both. The capital stock of the bank was to be $100,000, divided into 1,000 shares of the par value of $100 per share. This stock was at no time all subscribed for. Sometime after the meeting of April 15, it became apparent that a full subscription to the capital stock could not be obtained, and it was concluded that the enterprise should be abandoned, or turned over to one Garland, who was willing to undertake its promotion. The certificates of stock which had been issued were returned to the corporate officers, and the money or notes which had been paid therefor were returned to the respective subscribers.

The debts contracted on account of the installation of the fixtures, vault, safe, etc., had been incurred prior to the meeting of the stockholders mentioned. Subsequently one of the creditors brought an action against the corporation and obtained a judgment for the amount of its claim. In this action a receiver was appointed for the bank. In due time the receiver, under direction of the court, converted the available assets into cash. This amounted to $1,037.50 and, not being sufficient to meet the claims, the receiver made an application to the superior court for a call upon the stockhold-

ers for their unpaid subscriptions. The court fixed a date and directed that the receiver give notice to the stockholders, both by mail and by publication, of the time and place where a hearing would be held, for the purpose of determining the amount of the liabilities of the corporation, and the amount necessary to assess the solvent stockholders for the purpose of liquidating the same. Notice having been given as required by the order of the court, in due time the cause came on for hearing. At the conclusion of the hearing, the court entered an order wherein it was found "that there are unpaid claims against said German-American Bank of Seattle amounting to the sum of at least $5,000," and that it would be necessary, in order to meet the existing obligations, that a call be made upon each of the subscribers to the capital stock. The stockholders not responding to this call, the present action was instituted against them. Other facts will be noted in connection with the consideration of the points to which they may be particularly germane.

There are approximately sixty respondents in the action. In addition to the appellant's opening and reply briefs, six briefs have been filed by different groups of the respondents. A discussion of all the questions raised in these briefs would extend this opinion to forbidden lengths. Only those questions will be considered which seem to us determinative of the controversy.

The respondents Hull and Klyce open their brief with a motion to dismiss the appeal as to them for the reason that no copy of the abstract was served upon them. This motion must be granted. *Ollar-Robinson Co. v. O'Neill*, 80 Wash. 1, 141 Pac. 194. The plaintiff, in his reply brief, states that there was a stipulation that the one copy of the abstract served upon the attorneys for certain of the respondents should be sufficient. This stipulation, however, does not appear in the record. Had the stipulation been made a part of the record, or had the attorneys for the various respondents acknowledged on the back of the appellant's abstract the re-

ceipt of a copy thereof, there would be no occasion for the motion. But under the record as it is, there is no alternative but to dismiss the action as to these two respondents.

Upon the merits, it is first claimed that in the receivership proceeding the court did not acquire jurisdiction of the defendant corporation, and that, therefore, the entire proceeding is ineffectual. This question was before this court upon a former appeal in this case. *Silvain v. Benson*, 68 Wash. 286, 123 Pac. 457. It was there held that, upon the showing made, the court had acquired jurisdiction, and the cause was "remanded for trial upon the merits." The question having been presented and determined upon the former appeal, the ruling there becomes the law of the case upon that question and will not be again reviewed.

It is next claimed that the debts were not those of the German-American bank, but were the individual debts of one Heinzerling. It is asserted in one of the briefs that this was the view of the trial court. But that question is one which is not subject to be litigated in the present proceeding. As appears from the facts, the court fixed a day upon which the amount of the liabilities of the corporation would be determined, as well as the assessment necessary to meet these against the stockholders. Of this hearing, notice was given by mail and by publication. At the hearing, the amount of the claims against the corporation was determined, and it was ordered "that the call and assessment be and is hereby made against each and all of the subscribers of stock of the said German-American Bank of Seattle. . . ." It does not appear that that order was appealed from by any of the parties. The court there found that the claims were obligations of the corporation. The rule is that, where the validity of the claims against the corporation is determined in a receivership proceeding, it cannot be litigated when a subsequent action is brought against the individual stockholders. If these claims were in fact not the obligations of the corporation, that question should have been reviewed by an ap-

peal from the order of the court adjudging them to be such. *Shuey v. Adair*, 24 Wash. 378, 64 Pac. 536; *Bennett v. Thorne*, 36 Wash. 253, 78 Pac. 936, 68 L. R. A. 113.

Speaking upon this question in the case last cited, it was said:

"Two main questions were put in issue by the proceedings, and finally determined by the court, viz., (1) the right of the creditors represented by the receiver to have an assessment, that is, whether any assessment could be properly levied at that time; and (2) the amount of the assessment. Testimony was heard, and the stockholders availed themselves of an opportunity to cross-examine witnesses upon the subject of the amount of the assessment, and the court finally decreed the amount of the bank debts of a strictly banking character then existing. Upon that point the decree must be considered final, at least as to all parties regularly before the court and contesting that question. If the court had power to finally determine the exact amount of the assessment, certainly it ought to have had power to determine the receiver's right to any assessment at all, for it would be idle to determine the amount, if the right did not exist.

"That the decree is one from which an appeal will lie becomes more apparent when viewed from the aspect of an adverse decision. Suppose, for instance, it had appeared on the face of the petition that the last of the assets had been exhausted and applied more than six years before the petition for the assessment was filed; doubtless the court would have sustained the demurrers on the ground that the right to prosecute this remedy had accrued more than six years ago; but that is exactly what the appellants are contending now appears from the face of the petition. Suppose, farther, that the demurrers had been sustained, and the proceeding dismissed, on the ground that an assessment could not be properly levied at this time by reason of lapse of time; no one would doubt the receiver's right to appeal as from a final order; and, if a decree will give one party a right to appeal, when adverse to him, it must confer the same right on the other under a like condition. *Penter v. Staight*, 1 Wash. 365, 25 Pac. 469; *Taylor v. Spokane Falls etc. R. Co.*, 32 Wash. 450, 73 Pac. 499. On the whole, therefore, we think

that an appeal lies from the decree in the case before us, and that the cause is here for determination upon its merits."

Another contention is that, since the total amount of capital stock had at no time been subscribed for, and since the state bank examiner had not issued a certificate to the bank authorizing it to do a banking business, there can be no liability so far as the subscribers to the capital stock may be concerned. It must be remembered that this action is by the receiver as the representative of the creditors, and is not an action by the corporation seeking to collect unpaid subscriptions. Where the action is brought by the receiver, the defenses of no valid subscription to the capital stock of the company, or defects of organization, are not available. In *Cox v. Dickie*, 48 Wash. 264, 93 Pac. 523, two of the contentions were that valid subscriptions to the capital stock had not been made, and that there was a defect in the organization of the company. Speaking upon these contentions, together with others, in that case, it was said:

"The first five of these defenses may be considered together. It must be remembered that this is not an action by the corporation to enforce collection of subscriptions for stock or its contracts with its subscribers, but is an action brought by a receiver, under order of the court, to enforce such subscriptions for the benefit of creditors. As between the corporation itself and the stockholders all these defenses would probably be good, but as between the stockholders and the creditors of the corporation another rule prevails. *Adamant Mfg. Co. v. Wallace*, 16 Wash. 614, 48 Pac. 415. In such cases,

" 'It is no defense to a suit by a creditor to recover his debt out of an unpaid subscription, that the defendant was induced to subscribe to the stock by fraudulent misrepresentations of the agent of the corporation, or by an agreement which the corporation had failed to carry out, or that the corporation was irregularly organized or organized for an illegal purpose, or has been dissolved; nor can a stockholder set up informalities in the issue of the stock if the corporation had the power to create it, though he may show that the stock

is void as having been issued in excess of the limit imposed by the charter.' 26 Am. & Eng. Ency. Law (2d ed.), p. 1011. See also 10 Cyc., pp. 244 and 249; *Mitchell v. Matheson*, 23 Wash. 723, 63 Pac. 564; *Cole v. Satsop R. Co.*, 9 Wash. 487, 37 Pac. 700, 43 Am. St. 858.

"Under this rule the trial court was clearly in error in basing the judgment of dismissal upon the facts found as stated above. Such facts if true did not constitute a defense in this action, because the stockholders were estopped to say that the corporation was not a legal one, or that they had a contract with the corporation to purchase its stock at fifty per cent of its par value, or that they subscribed for its stock believing that the company was not in debt. The receiver in this action represents the creditors. *Mitchell v. Matheson, supra.*"

As to the defect claimed, in that the state bank examiner had at no time issued a certificate authorizing the corporation to do a banking business, it may also be said, as stated above, that the claims were found by the superior court in the receivership proceeding to be obligations of the corporation, and that no appeal was prosecuted from that judgment.

As to some of the respondents, it is claimed that they placed their names upon the subscription list but did not indicate in figures thereafter the amount of the subscription or the number of shares, and that therefore there can be no liability as against them. The number of shares set opposite their respective names, it is claimed, were placed there without authority. When they signed their names to the subscription list it must have been as an incentive to others to subscribe. In other words, to permit the promoter to represent them as subscribers when in fact they were not. In *Jewell v. Rock River Paper Co.*, 101 Ill. 57, the court considered the question as to whether a person who places his name upon a subscription contract for the purpose of inducing others to subscribe, but does not carry out the amount of the subscription in figures, can be held upon such subscription contract. Answering the contention that there was no liability upon such subscription, it was there said:

"We frankly confess our inability to perceive the force or plausibility of this theory, however prominent or influential the parties may be. The more natural theory is, that if the amounts of their subscriptions were not carried out at the time, and were purposely left blank, the object in doing so was to enable Willard to represent them as subscribers when they were not, which would have been a palpable fraud on those subscribing through such an influence. It is well known that in becoming a party to an enterprise of that kind one is generally controlled in a large degree, by the character of those who are, or who are expected to be, identified with it. Any artifice or trick, therefore, tending to mislead a subscriber in this respect would be highly reprehensible in morals, as well as a legal fraud. If, then, appellants signed the subscription book of the company in blank for such purpose, it is but fair and just to hold that as to creditors of the company they thereby impliedly authorized those empowered to take subscriptions to fill up the blanks, and that having been done in this case, as is claimed, appellants are estopped from questioning their authority to do so."

To the same effect, see, also, *Johns v. Clothier*, 78 Wash. 602, 139 Pac. 755. It is argued that certain of the subscriptions were conditional, and that, inasmuch as the conditions were never fulfilled, no liability arose by reason of such subscription. It may be assumed, but not decided, that the rule is that a conditional subscriber is not liable even when the rights of creditors are involved, unless the condition upon which a subscription was based has been fulfilled, or unless the condition is waived or the subscriber is estopped from asserting the condition. In this case, the subscription contract was introduced in evidence. Upon its face it does not appear to be conditional. The appellant prepared an abstract of the record. The respondents prepared a supplemental abstract. In neither of these abstracts is there evidence set forth or referred to which shows a conditional subscription. It may be that the statement of facts shows such evidence, but if it does, we fail to find that it has been abstracted. We have not overlooked the fact that in the respondents' supple-

mental abstract it is said the promoter, Heinzerling, testified that the subscriptions should not become effective until the entire amount of the capital stock was subscribed. In support of this statement, certain pages of the statement of facts are referred to. But upon an examination of the statement of facts at the pages referred to, we are unable to find testimony supporting the statement as abstracted.

One of the respondents, Fred H. Peterson, is not obligated by the subscription contract introduced in evidence. His testimony, as abstracted, is unequivocal and positive that he neither signed the subscription list, which was plaintiff's "Exhibit E," nor authorized any one to sign his name thereto. By reference to the statement of facts, the abstract in this regard is verified. This appellant, having neither signed nor authorized the placing of his name upon the subscription contract introduced in evidence, is not liable.

Finally, it is claimed that, when certain of the subscriptions were taken, fraudulent representations were made by the person securing the subscriptions. But we do not find in the abstracts evidence sustaining this charge. It is true that the certificates which had been issued were surrendered. But the reason for the surrender does not appear to have been because the subscriptions were induced by fraud, but because the full amount of the capital stock had not been subscribed, and if the subscriptions could not be secured the enterprise must fail.

It may be that in the statement of facts there is testimony which would show certain of the subscriptions to be conditional, and others fraudulent, which had been rescinded for that reason before the rights of creditors intervened. The court, however, will not search the statement of facts for testimony to which no reference is made in the abstracts.

From what has been said, our conclusion is that the judgment as to Hull, Klyce and Fred H. Peterson will be affirmed. The judgment as to all the other respondents will be reversed. The judgment rendered against Heinzerling is not involved

in this proceeding, he not having appealed.   Klyce, Hull, and Peterson will recover their costs in this court against the receiver.   The receiver is entitled to costs as against those respondents as to whom the judgment is reversed.   The cause will be remanded with directions to the superior court to take further testimony for the purpose of determining the proportionate amount for which judgment shall be rendered against each solvent stockholder, in order that the debts of the corporation and the expenses of the receivership and litigation may be paid.

CROW, C. J., ELLIS, GOSE, and CHADWICK, JJ., concur.