[No. 16757. Department One. May 15, 1922.]

## S. A. ATWOOD, *Plaintiff,* v. McKENZIE-WATERHOUSE COMPANY, *by John H. Kelly, Receiver, Respondent,* LAURA M. GAUDETTE, *Appellant.*[1]

CORPORATIONS (39, 225)—STOCK—SUBSCRIPTIONS OBTAINED BY FRAUD—INSOLVENCY—RIGHT TO RESCIND. A suit to rescind a subscription to the capital stock of a corporation may be brought after the corporation has become insolvent and been placed in the hands of a receiver, where the subscriber has used all due diligence, and has not profited by the transaction or misled others to their detriment, and there are no creditors who became such after the subscription; since the trust fund theory, precluding such suits after insolvency, rests upon equitable principles and must yield to superior equities.

SAME (39)—SUBSCRIPTION OF STOCK—RESCISSION—STATUTES. Rem. Comp. Stat., § 3842, providing that every stockholder shall be liable to creditors on their unpaid stock subscriptions has no application to one who was not in fact a subscriber because induced to subscribe through fraud, and entitled to rescind.

[1]Reported in 206 Pac. 978.

SAME (39). Rem. Comp. Stat., § 3803, providing that no corporation shall commence business until the whole amount of the stock is subscribed, has no bearing upon the right of a subscriber to rescind, where there were no creditors who became such after the subscription in question.

APPEAL (219)—NOTICE—PARTIES ENTITLED—SERVICE ON ATTORNEY. Notice of appeal upon a necessary party may be shown by the acceptance of service by his attorney of record.

SAME (165, 218)—NOTICE—PARTIES ENTITLED—CREDITORS NOT APPEARING. Upon appeal in an action against a receiver of an insolvent corporation to rescind a stock subscription, parties who merely filed claims against the receiver and took no part in the case, are not necessary parties upon whom notice of appeal need be served.

Appeal from a judgment of the superior court for Whatcom county, Brown, J., entered June 27, 1921, upon sustaining a demurrer to the complaint, in an action to rescind a subscription for corporate stock. Reversed.

*Kellogg & Thompson,* for appellant.
*Thomas R. Waters,* for respondent.

BRIDGES, J.—Action to rescind a subscription for capital stock of a private corporation, and for the return of a promissory note given in payment therefor. The demurrer of the defendants to the complaint was sustained, and plaintiffs having refused to plead further, a judgment was entered dismissing the action. They have appealed. Inasmuch as the sufficiency of the complaint is the only matter before us, it will be necessary to set out considerable portions of it.

It alleges that the respondent, Kelly, is the duly appointed, qualified and acting receiver of the respondent corporation; that, on January 27, 1921, the appellant subscribed for 1,667 shares of the capital stock of the corporation, agreeing to pay therefor six dollars per share, or a total of $10,000; that she paid down

$1,000 in cash, and gave the corporation her promissory note for the balance of $9,000, payable on or before six months after date; that the stock purchased by her was some that had previously been issued and returned to the treasury of the corporation; that she was induced to purchase this stock by the false and fraudulent representations of the president of the company concerning material matters (which representations are fully set out); that she would not have made such purchase but for such misrepresentations; that, on February 21, 1921, the said corporation was adjudged insolvent and a receiver appointed; that she first learned of the insolvency of the corporation at the time, or very shortly following, the appointment of the receiver; that she did not learn that the representations made to her to induce her to purchase the stock were false and fraudulent until immediately following the adjudication of insolvency of the corporation and the appointment of the receiver; "that, immediately upon the discovery of the falsity of such representations and the fraud and deceit practiced upon her by the said A. L. McKenzie, acting for and in behalf of said corporation, all as hereinbefore set forth by the petitioner, she caused to be returned to John H. Kelly, receiver, the certificate of stock theretofore issued to her, and accompanied the same by a demand that the stock subscription be cancelled, and that the promissory note herein mentioned be returned to her; and that the said stock certificate, ever since on or about March 26, 1921, has been in the custody of the receiver; that the petitioner herein, Laura M. Gaudette, has never at any time since the signing of said stock subscription contract and promissory note, participated in or taken any part in the management of the affairs of said corporation, and that no indebtedness of any kind or character in any considerable amount has been created

and incurred by said corporation since the date of the subscription contract, which indebtedness is outstanding and unpaid at this time, and that all of the creditors of the said corporation became such prior to the time of making said subscription contract and promissory note, and that no creditors of said corporation extended credit relying upon said stock subscription or with knowledge that the same had been made." The concluding portion of the complaint is not clear. It definitely says that no persons became creditors of the corporation after the appellant subscribed for the stock and gave her note, but it also intimates that the company may, after the subscription, have contracted debts in an inconsiderable amount. As against a demurrer, we must construe the complaint to allege that there were no creditors who became such subsequent to the subscription. We are the more willing to so construe it because the case seems to have been presented here on that theory. It is necessary to determine the meaning of the complaint because it does not necessarily follow that appellant's rights against subsequent creditors are the same as those against prior creditors.

In the argument here made it seems to be conceded that the complaint would be sufficient in a suit against the corporation as a solvent concern, but it is contended that, as against the receiver, it does not state facts sufficient to justify any relief.

As a general proposition, it may be said that the capital stock of an insolvent corporation is a trust fund for the benefit of its creditors, and any unpaid subscriptions for the capital stock are assets of the corporation and a trust fund for the benefit of the creditors.

It seems to be the established rule in England that a suit to rescind a stock subscription on the ground of fraud cannot be maintained by a subscriber for stock

after proceedings have been taken to liquidate the affairs of the corporation on the ground of insolvency. The American courts have not generally adhered to the English doctrine in all its strictness. The weight of authority in America, especially by the more recent cases, is to the effect that he who has been induced by false or fraudulent representations to subscribe for capital stock of a corporation may rescind after the corporation has become insolvent and has been placed in the hands of a receiver, if he has not been guilty of laches in discovering the fraud practiced upon him and in repudiating the transaction after discovering the fraud, and has not in the meantime participated in the affairs and business of the corporation, and has not been guilty of any affirmative act which might mislead others to their detriment, and no person has become a creditor of the corporation after his subscription was made.

There are some American cases which seem to hold that a subscription to capital stock, induced by fraud, cannot be rescinded after the insolvency of the corporation. *Howard v. Glenn,* 85 Ga. 238, 11 S. E. 610, 21 Am. St. 156; *Meholin v. Carlson,* 17 Idaho 742, 107 Pac. 755, 134 Am. St. 286; *Hinkley v. Sac Oil etc. Co.,* 132 Iowa 396, 107 N. W. 629, 119 Am. St. 564. These cases and others, as well as the English cases, are rested on the theory that, as soon as the corporation becomes insolvent, all of its assets, of whatsoever kind or nature, at once become a trust fund for the use and benefit of creditors. It seems to us that these cases lose sight of the fact that the trust fund doctrine is itself based on equitable principles, and that it should yield to equities which are superior. It seems to us that the equities of one who was induced by fraud to purchase capital stock and who used all due diligence thereafter to discover the fraud, and to rescind his contract, and who

has not profited by the transaction, and who by his conduct has not misled others to their detriment, are certainly greater than those of a creditor who became such before the other's subscription to the capital stock. If that out of which the subscriber has been defrauded by the agents of the corporation be returned to him, the creditors who became such before he subscribed are in no worse position than they would have been in had the subscription not been made. Where, under these circumstances, the subscriber has not been at fault and has acted with diligence, it would be inequitable to permit the creditors to profit by his misfortune. These circumstances raise greater equities in him than are raised by the trust fund theory in the creditor.

In the case of *Park v. Kribs,* 24 Tex. Civ. App. 650, 60 S. W. 905, discussing this question, the court said:

"We think that it may be stated that the great weight of authority in this county is, that where there has been no lack of diligence on the part of the stockholder in discovering the fraud, or unreasonable delay in asserting his rights after discovering the fraud, or active participation in the management of the corporation, or debts have not been contracted by the corporation after his subscription, one who has been induced to become a stockholder in a corporation by reason of its fraud or that of its agents, is entitled to have the subscription rescinded and his stock cancelled, and the amount paid returned to him, upon tendering back his stock."

In the case of *Newton National Bank v. Newbegin,* 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727, upon facts similar to those here, the court said:

"If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discov-

ering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid,—in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent. But if none of these conditions exist, and the proof of the alleged fraud is clear, we think that a stockholder should be permitted to rescind the subscription as well after as before the company ceases to be a going concern."

In the case of *Morrisey v. Williams*, 74 W. Va. 636, 82 S. E. 509, L. R. A. 1915D 792, the court quoted approvingly from 2 Clark & Marshall, Private Corporations, § 473, as follows:

" 'In England, and in some of the states of this country, it has been held that a subscription cannot be repudiated on the ground of fraud, for the first time, after the corporation has become insolvent, and has made an assignment or gone into the hands of a receiver or an assignee in bankruptcy, even though the fraud may not have been discovered before insolvency, and though there may have been no laches in discovering it. According to the better opinion, however, this doctrine cannot be sustained without qualification. Surely, the equity of a person who has been induced to subscribe for stock in a corporation, without negligence on his part, by the deceit of its officers or agents, and who has not been guilty of negligence, either in failing to discover the fraud, or in repudiating his subscription after its discovery, cannot be said to be inferior to the equity of persons dealing with the corporation and becoming its creditors, and he should not be denied the right to set up the fraud as a defense in an action or other proceeding to enforce his subscription, merely because the corporation has become insolvent, and it is sought to enforce the subscription for the benefit of its creditors. . . . This rule should undoubtedly be applied where no debts have been contracted by the corporation since the date of the subscription.' "

To the same effect see the following cases: *Beal v. Dillon*, 5 Kan. App. 27, 47 Pac. 317; *First National Bank of Deadwood v. Gustin Minerva Con. Min. Co.*, 42 Minn. 327, 44 N. W. 198, 18 Am. St. 510, 6 L. R. A. 676; *Smith v. Jones*, 173 Ky. 776, 191 S. W. 500, L. R. A. 1917C 890; *People v. California Safe Deposit & Trust Co.*, 19 Cal. App. 414, 126 Pac. 516, 520; *Farmers' State Bank of Mobridge v. Empey*, 35 S. D. 107, 150 N. W. 936; *Gress v. Knight*, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900 and note; *Stone v. Walker*, 201 Ala. 130, 77 South. 554, L. R. A. 1918C 839; 7 R. C. L. 842; *Robinson v. Dickey*, 14 Tex. Civ. App. 70, 36 S. W. 499; *Stufflebeam v. De Lashmutt*, 83 Fed. 449.

It will be noticed that the appellant's subscription was made less than a month before the company was adjudged insolvent and a receiver appointed, and that the allegations of the complaint with reference to lack of laches and diligence and as to conduct bring the case within the rule stated in these authorities.

It appears that this court has not before considered this exact question. Of all our cases, the one nearest in point is *Johns v. Coffee*, 74 Wash. 189, 133 Pac. 4. The facts in that case were that Coffee subscribed for certain of the capital stock of the Pioneer Fire Insurance Company, and gave his note in payment therefor. He was induced to purchase this stock through fraudulent representations concerning the affairs of the company. Before it became insolvent he learned of the fraud and at once served notice on the company, repudiating the stock subscription and demanding its cancellation. He did not take any further steps in that direction. The company continued to do business and create indebtedness for some months afterwards, when it was adjudged insolvent and a receiver was appointed, who sued Coffee on his subscription. After quoting from Thompson on Corporations to the effect

that one who has been induced by fraud to buy stock of a corporation may rescind, the court said:

"No different rule should be applied, we think, merely because the action was delayed until after the corporation had gone into the hands of a receiver. If the respondent had a defense against a suit to recover on the unpaid balance by the corporation itself, he had a like defense against a suit by the receiver of this corporation; unless of course he has committed some affirmative act subsequent to serving his notice of rescission which would estop him from making the defense, such as inducing others to become creditors of the corporation on the faith and belief that he was a stockholder therein. No mere delay on his part will work that result. Here there is nothing to show that any of the persons the receiver represents became creditors of the corporation on the faith of the belief that the respondent was a stockholder therein. On the contrary, it is not shown that any of them ever knew he was such a stockholder until the books were searched after the corporation's insolvency." (*Johns v. Coffee, supra.*)

Practically the only difference between that case and the one at bar is that the subscriber gave written notice repudiating the transaction before the corporation became insolvent. That fact, however, would not make any difference if the subscriber were diligent in discovering the fraud and in action after such discovery.

The case of *Cox v. Dickie,* 48 Wash. 264, 93 Pac. 523, is cited. There the receiver of the insolvent corporation instituted suit against certain persons who had subscribed but not paid for their stock. A defense was made on the ground that the capital stock of the company had not been fully subscribed, and that the trust fund theory was not applicable because it was not shown that the creditors relied on these stock subscriptions, and fraudulent representations which induced

the subscription to the stock. Speaking of these various defenses, the court said:

"It must be remembered that this is not an action by the corporation to enforce collection of subscriptions for stock or its contracts with its subscribers, but is an action brought by a receiver, under order of the court, to enforce such subscriptions for the benefit of creditors. As between the corporation itself and the stockholders all these defenses would probably be good, but as between the stockholders and the creditors of the corporation another rule prevails."

There is nothing in that case to indicate that the stock subscribers had been diligent in discovering the fraud, or had acted promptly thereafter, or that they had not actively participated in the business affairs of the corporation. In the absence of these equities in their favor, the stockholders ought not to be permitted to defend on the ground of fraud.

The case of *Silvain v. Benson*, 83 Wash. 271, 145 Pac. 175, is also cited. But the controlling facts of this case cannot be found there. We have examined all the other cases from this court cited by respondents, but none of them is controlling or lends very much light to the question here.

The respondent calls our attention to Rem. Comp. Stat., § 3842, which provides:

". . . Each and every stockholder shall be personally liable to the creditors of the company, to the amount of what remains unpaid upon his subscription to the capital stock, and not otherwise: . . ."

He argues from this section that the appellant is not entitled to recover so long as there are any creditors, whether the debts were incurred before or after the subscription. It is true that this section makes no distinction between classes of creditors, but it imposes the obligation on stockholders, which necessarily means those whom the law will determine to be such. We are

here holding that, because of the fraud, the appellant is not a stockholder, and under those circumstances this section of the statute would be inapplicable.

Respondent also calls our attention to Rem. Comp. Stat., § 3803, which provides:

". . . that no such corporation shall commence business or institute proceedings to condemn land for corporate purposes until the whole amount of its capital stock has been subscribed: . . ."

He says that in most states there is no statute requiring all of the capital stock to be subscribed before the corporation commences to do business, and insists that this statute must have an important bearing on the question in this case. We frankly confess our inability to see how this statute can affect the question under discussion. If the appellant were seeking to rescind on the ground that she is not liable because the stock she contracted to purchase was or was not such as the statute requires must be subscribed before the corporation commences to do business, then respondent's argument might apply. But appellant makes no such contention. The sole ground on which the right to rescind is based is fraud, and the sole question in the case, as it is now before us, concerns superior equities.

We need not inquire whether the appellant would be entitled to the relief sought if it appeared that there were creditors who became such after her subscription. A decision of that question is not necessary, because the complaint here shows that the corporation did not have any creditors who became such after appellant's subscription. In other words, so far as this case goes, we reserve decision as to the rights of a receiver who represents creditors who became such after the subscription was made and the note delivered.

We have not overlooked respondent's motion to dismiss the appeal. It is contended that the motion should

be granted, first, because no notice of appeal was served on Atwood, the plaintiff in this case; and second, because no notice of appeal was served on any of the creditors. If it be conceded that it was necessary to serve the notice on Atwood, the record shows that his attorney accepted service of such notice. It was not necessary to serve the notice of appeal on any of the creditors. The statute provides that:

". . . When the notice of appeal is not given at the time when the judgment or order appealed from is rendered or made, it shall be served in the manner required by law for the service of papers in civil actions and proceedings, upon all parties who have appeared in the action or proceeding: . . ." Rem. Comp. Stat., § 1720.

It is contended that the record shows that, at the time of the appeal here, a large number of persons had filed claims with the receiver. They, however, were not in any manner brought into this proceeding; they took no part in it and could, under no circumstances, be said to be parties in interest or upon whom it was necessary that notice of appeal be served.

The case of *Cole v. Washington Motion Picture Corp.*, 112 Wash. 548, 192 Pac. 972, is cited in support of the motion. The situation there was entirely different from that here. In that case the receiver had reported the allowance of various claims in various amounts, which, generally speaking, were less than the creditors' bills called for. Upon the order of the court, these creditors were cited into court for the purpose of determining what amounts should be allowed. Many of the creditors were contenders against the claims of the other creditors. One of the creditors appealed from the amount allowed him, and it was held that the other creditors had appeared at the hearing and were adverse parties and were necessary parties to the appeal, and

that the motion to dismiss must be allowed for that reason. There was no such appearance here by the creditors, and consequently they were in no sense adverse parties.

In the case of *Jensen v. Angeles Brewing & Malting Co.*, 87 Wash. 392, 151 Pac. 825, the situation was substantially as it is here, and a motion to dismiss was made on the ground that it was necessary to serve the various creditors who had filed claims. We said:

"We think the phrase 'parties who have appeared in the action or proceeding,' refers, in cases like the present, to those parties who have appeared in the particular proceeding in which the order appealed from is entered, not to those who may have filed claims with the receiver and have taken no further part in the proceedings."

The motion to dismiss the appeal is denied. The judgment is reversed and the cause remanded with instructions to overrule the demurrer to the amended complaint.

PARKER, C. J., FULLERTON, MITCHELL, and TOLMAN, JJ., concur.